[S. F. No. 3253.   Department One.—January 3, 1903.]

SUNOL SCHOOL DISTRICT, etc., Respondent, v. L. J. CHIPMAN, County Superintendent of Schools, etc., Appellant.

SCHOOL DISTRICTS—NEW DISTRICT—DIVISION OF SCHOOLHOUSES—MAINTENANCE OF SCHOOL BY OLD DISTRICT—APPORTIONMENT OF SURPLUS FUNDS.—A new school district formed by division of an old district having two schoolhouses, which received one of them, in which school was maintained by the old district throughout the year, and

for six months after the new district was constituted, prior to the election of trustees, which took place near the end of the school year, is not entitled to any apportionment of surplus funds left on hand under subdivision 4 of section 1858 of the Political Code after apportionment made to each district under subdivision 3 of that section.

ID.—CONSTRUCTION OF CODE.—The express language of subdivision 4 of section 1858 of the Political Code requires an existing school district, with average attendance therein during the preceding school year as the basis of apportionment thereunder; and it cannot be controlled in reference to the new district by implication from the facts of this case, nor by implication from the exception found in section 1859 of the same code, which leave only such right of apportionment of school funds to the new district which is applicable thereto, without inferring a right to the apportionment of surplus funds specially provided for in subdivision 4 of section 1858, which is not applicable to a newly organized district. ·

APPEAL from a judgment of the Superior Court of Santa Clara County.˙ W. G. Lorigan, Judge.

The facts are stated in the opinion.

James H. Campbell, District Attorney; William A. Beasly, and R. R. Syer, for Appellant.

Partridge & Jacobs, for Respondent.

CHIPMAN, C.—The case is here on an agreed statement of facts, defendant appealing from the judgment, which directed defendant to apportion to the Sunol School District "its *pro rata* share of state and county school moneys, to be apportioned upon the average daily attendance of the pupils in the public schools of said county for the year ending June 30, 1901, based upon the average daily attendance in said school district of 239 pupils," and enjoining defendant from apportioning said *pro rata* share of said moneys to any other school district or districts. It appears from the agreed statement of facts that prior to January 21, 1901, there existed, and still exists, in Santa Clara County, a school district in which were maintained two public schoolhouses for the accommodation of its pupils, known respectively as Sunol schoolhouse and Hester schoolhouse, located in different parts of the district; that Hester School District maintained schools

in both of these houses for ten full school months from September 1, 1900, to June 30, 1901, the average daily attendance "at each of said schoolhouses in said Hester School District" being duly reported to defendant; that on January 21, 1901, the supervisors of the county divided Hester School District, and a new school district was formed, plaintiff herein; that up to June 30, 1901, this new district did not maintain a school, but pupils were permitted to attend, and did attend, at said Sunol schoolhouse at the expense of Hester School District and under the management of its trustees; that the Sunol School District was so formed as to include the Sunol schoolhouse, and the Hester School District, by the division, retained the Hester schoolhouse; that on June 12, 1901, defendant appointed trustees for the plaintiff district, who served until July 1, 1901, when their duly elected successors became the trustees, and since September 1, 1901, maintained a school in Sunol School District for more than six months; that the average daily attendance at this Sunol schoolhouse for the school year ending June 30, 1901, was 239, which was duly reported to defendant; that in September, 1901, defendant duly filed with the supervisors, and with the county auditor, an estimate of the amount of school fund needed for the ensuing year, and the supervisors duly levied a tax to raise the amount so estimated, and the first installment of said tax was collected and apportioned, according to law, to the several school districts of the county, including plaintiff, "in proportion to the number of school-census children in each district, . . . and that the full amount required by law to be paid under such apportionment has been paid to said plaintiff"; that the second installment is now due, and is in course of collection, but that defendant "refuses to apportion any part of said money to the plaintiff herein, and has threatened, and does now threaten, to apportion the whole thereof to other school districts," and unless restrained will do so; "that said money is necessary for the support of the school in said Sunol School District for the balance of the present school year ending June 30, 1902, and unless said money is apportioned to said Sunol School District, the plaintiff herein, said plaintiff will be compelled to close said Sunol school, to the detriment of plaintiff and to the school-children in said district."

Plaintiff claims an apportionment of money under subdivision 4 of section 1858 of the Political Code, which reads: "All school money remaining on hand after apportioning to the districts the moneys provided for in subdivision three of this section must be apportioned to the several districts in proportion to the average daily attendance in each district during the preceding school year." Subdivision 3 reads: "Five hundred dollars shall be apportioned to each district for every teacher assigned to it; provided, that to districts having ten and less than twenty school-census children, shall be apportioned four hundred dollars; provided further, that to districts having over seventy school-census children and a fraction of less than twenty, there shall be apportioned twenty dollars for each census child in said fraction." Section 1859 of the same code reads: "No school district, except one newly formed, is entitled to receive any apportionment of state or county school moneys which has not maintained a public school for at least six months during the next preceding school year." Provision is also made for districts prevented from maintaining schools by fire, flood, or prevailing epidemics.

The preceding year referred to in the statute and now in question is the year ending June 30, 1901,—i. e. the year immediately preceding the year in which the apportionment of school money is to be made. The school year begins July 1st and ends on the last day of June. (Pol. Code, sec. 1878.) The agreed case shows that a school was maintained in the Sunol schoolhouse, situated in the new district, the expense being paid by the Hester School District as it stood before the division. Subdivision 4 of section 1858 awards the money "in proportion to the average daily attendance in each district during the preceding school year." This subdivision requires that there should be a district, and there should also be attendance in the district, but does not in terms require that the district shall have maintained the school. Respondent contends that it is immaterial by what means the school was maintained, or by whom, so long as there is a district and children attend the school in that district. But the difficulty with this contention availing respondent is, that there was no Sunol School District from July, 1900, until January 21, 1901, and no trustees of that district until nearly the end of the school year, while the statute invoked bases the appor-

tionment on the average attendance in the district "during the preceding school year," and furnishes no other basis of apportionment. Respondent would overcome this difficulty by the provisions of section 1859, and it contends that the exception there referred to meets the case; that the implication is, that such district is entitled to an apportionment, whether it has maintained a school or not. We do not see how the plain provisions of subdivision 4 of section 1858 can give way to an implication to be derived from section 1859, for the language is, "the moneys . . . must be apportioned . . . in proportion to the average attendance in each district during the preceding school year," and if there was no district and no attendance for the preceding school year there could be no apportionment under this subdivision of section 1858, for the obvious reason that there would then be no basis of apportionment, and section 1859 furnishes no basis.

Funds are provided for all districts, whether old or new, by subdivisions 1 and 3 of section 1858, and subdivision 4 only provides for the distribution of any surplus "school moneys remaining on hand after apportioning" the amounts provided for in subdivision 3. By subdivision 4 of section 1577 provision is made for "children residing in any newly formed district, in any district whose boundaries have been changed, or in any joint district," by which such children "shall be permitted to attend the school in the district or districts from which the newly formed district was constituted until the first day of July next succeeding the formation or change," and no doubt it was by virtue of this provision that Hester School District continued to maintain the Sunol school until the end of that school year, and the children in Sunol district claimed the right to and did attend school there. Respondent contends that Hester School District, by defeating this action, seeks to be reimbursed for its expenditure of money in Sunol district after January 21, 1901, until July 1st. If Sunol School District is not entitled to the apportionment, it cannot be heard to complain that other districts may get it. We must presume that defendant will dispose of the money under his control according to law. The issue here is not what he may but what he may not do with it. The only question is whether Sunol School District can be apportioned any money under the subdivision in question. It rarely hap-

pens, as in the case here, that a new district is so constituted
as to find itself provided with a schoolhouse at the time of its
creation. If it had not so happened in this case, ample pro-
vision is made by law for building and equipping a school-
house in any newly formed district, either by a tax (Pol.
Code, sec. 1830 et seq.), or by issuing bonds (sec. 1880 et seq.).
But the law does not require the new district to provide itself
with a schoolhouse at once, the provision being that it must
do so, and the school must be opened "not later than the
second Monday of September in the year in which the order
[creating the district] was made; otherwise said order shall
be null and void." (Pol. Code, sec. 1581.) To that time the
district is entitled to any apportionment awarded it by sub-
divisions 1 and 3 of section 1858, based on the number of
school-census children. Further than this there seems to be
no warrant of law for the maintenance of the school, since
the money on hand after apportioning the moneys as else-
where provided, "must be apportioned to the several districts
in proportion to attendance in each district during the pre-
ceding year." (Pol. Code, sec. 1858, subd. 4.) We can see
no special hardship in this construction of the statute. No
reason is apparent why Sunol School District should derive
a right to the apportionment now claimed because of the
happy circumstance that gave it a schoolhouse at the time it
was brought into existence, which would not accrue to the
ordinary newly created districts not thus favored. Nor can
we see any good reason why the law should be construed to
favor the apportionment claimed because Hester School Dis-
trict did in fact maintain a school in the newly formed district
for the latter half of the "preceding school year." These
were fortunate circumstances for the new district, but furnish
no ground for the construction of the statute contended for.
It is not entirely clear to our minds what the legislature meant
in passing section 1859. Prior to its amendment in 1889
(Stats. 1889, p. 195), the section declared that "no school
district [except one newly formed] is entitled to receive any
apportionment of state or county moneys which has not main-
tained a public school for at least six months during the then
next preceding school year." It then provided as follows:
*"But any new district, formed by the division of an old one,
is entitled to its apportionment when school has been main-*

*tained in the old district before division, and in the new district after division, at least eight months."*

The words "except one newly formed" in brackets were inserted in the amendment and the words italicized were omitted. This much, we think, may be safely said: That the section as it now reads deprives every school district (not newly formed) of any apportionment whatever which has not maintained a public school for at least six months during the next preceding school year. As to newly created districts, which are excepted, they are left with such right to apportionment as other sections of the code give them; they are relieved from the prohibitions of this section, and that is all the meaning that can be given to it as respects the excepted class.

In our opinion the judgment is based upon an erroneous construction of the statute and should be reversed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed. Harrison, J., Van Dyke, J., Garoutte, J.