# Anniston Electric & Gas Co. *v.* The State.

## *Taxation.*

(Decided February 4, 1915.   67 South. 843.)

*Taxation; License; Street Railway.*—Under section 2361, a street railway which had its office and place of business and lines of railway within a city of more than ten thousand inhabitants, and whose lines also extended, and were operated, within the limits of two adjacent cities of less than five thousand inhabitants, was required to pay a license tax to the state of $50.00 for the larger town, and an additional $15.00 license for each of the small towns into which its lines extended.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Proceedings by the State of Alabama to collect certain license taxes from the Anniston Electric & Gas Co. Judgment for the state and the defendant appeals. Affirmed.

KNOX, ACKER, DIXON & STERNE, for appellant.   It was not the purpose or intention of the Legislature to require more than one license for any one business, and the statute cannot be construed to require a license tax for the town where the principle place of business is located, and an additional license tax for each adjacent town through which the lines run.—*Southern Ry. Co. v. Mitchel,* 139 Ala. 629.

W. L. MARTIN, Attorney General, for the State.   There is no unity of locality in this instance.—*Johnson v. The State,* 152 Ala. 61.   Taxation is the rule and exemption the exception, and exemptions are never presumed.— *City Counsel v. Shoemaker,* 51 Ala. 114; *Swann v. The State,* 77 Ala. 545.   It would be a strained construction of the plain language to hold that it meant anything but

that the license prescribed should be paid for each locality through which the company operates its line.

THOMAS, J.—Section 2361 of the Code of 1907 provides: "Licenses are required of all persons engaged in or carrying on any business, or doing any act in this section specified, for which shall be paid for the use of the state the following taxes, to wit: * * * (35) Each electric light or power company, street railroad company, water works company or corporation, gas company or corporation, operated by a person or company or corporation for public uses, other than a municipality, shall pay to the state the following license taxes: In cities or towns of twenty thousand inhabitants or more —two hundred dollars; in cities or towns of more than ten thousand inhabitants and less than twenty thousand inhabitants—fifty dollars; in cities or towns of more than five thousand inhabitants and less than ten thousand inhabitants—twenty-five dollars; in cities and towns of less than five thousand inhabitants—fifteen dollars."

The city of Anniston is a city of more than 10,000 but less than 20,000 inhabitants. Adjoining it on one side is the town of Oxford, with a population of less than 5,-000; and adjoining it on another side is the town of Hobson City, with a population also of less than 5,000.

The appellant is a public service corporation, with its office and place of business in the city of Anniston, where it operates a system of street railway for public uses. Some of its lines, over which it operates cars, extend, however, from the city of Anniston (the head of the system) out into, along, and through some of the streets of the adjacent towns of Oxford and Hobson City. And the sole question presented by this appeal is whether, under the statute quoted, the appellant, as

it contends, must pay, as a license tax to the state for operating its said system of street railway, only $50, being the amount fixed by the statute, as seen, for operating such a railway in a city the size of Anniston, where appellant's office, place of business, and the head and center of the system is located; or whether, as the state contends, it must pay, in addition to such $50, $15 for operating in each of the towns of Oxford and Hobson City—towns, as stated, of less than 5,000 inhabitants— into and through some of the streets of which appellant's said lines of street railway extend from Anniston.

It is our opinion that the contention of the state is correct, and that that contention, as stated above, expresses the proper interpretation of the statute, whose evident design was to proportion and regulate the amount of the license tax required by it for doing business in this state, according to the extent that the privilege taxed had been enjoyed in this state, which extent is, by the terms of the statute, we think, to be ascertained and measured by the number of inhabitants in each of the cities and towns in which the business is operated or carried on; it being contemplated that each municipality of the state so entered by such company or corporation in the carrying on of such business would enhance, in proportion to its population, such company's or corporation's opportunities for increasing such business and the consequent revenues therefrom. Hence, that the privilege taxed of doing that business in this state would become more valuable as each new unit of territory was entered in carrying it on and would furnish justification for the increase required in the license tax for the doing of such business in the state.

The fact that appellant's lines of street railway do not extend over all the streets of the adjacent towns of Oxford and Hobson City, but over only a portion of

them, and then only as a continuous line from Anniston, is immaterial; since appellant, under our understanding of the meaning of the statute, has no right to enjoy to any extent whatever the privilege of operating its street railway in either of these towns without first paying the aditional license tax required; and since when it does pay such additional tax it has the right to enjoy such privilege to the full extent, or less, as it may choose.

The fact therefore that it has chosen, for reasons of its own, not to enjoy the privilege to the full extent allowed, and the fact that its office, place of business, and the head of its system is in Anniston, furnish no reason, to our minds, why it should be exempted from the operation of the provisions of the statute, which, as we interpret it, requires, as stated, an increase in the tax for each separate municipality entered in the carrying on of that business.

We hold, consequently, that the lower court committed no error in sustaining the state's demurrers to the defendant's special pleas setting up those facts in defense of this suit brought by the state against appellant for the recovery for each of the years from 1909 to 1913, inclusive, of the $15 license tax for operating its street railway in each of the towns of Oxford and Hobson City; appellant having for each of the years mentioned paid to the state the $50 for operating its railway in the city of Anniston.

Appellant, in support of its contention that the court did err, cites us to the case of *Southern Railway Co. v. Mitchell,* 139 Ala. 629, 37 South. 85, where, in construing a statute providing for the payment of a license tax "for each toll bridge" and requiring that if the bridge was "in or within two miles of the corporate limits of any town or city" of 5,000 inhabitants or more

the tax should be $75, but that if the bridge was "in or within two miles of a town or city" of 2,000 inhabitants and less than 5,000, the tax should be only $50, it was held that, where such bridge was within two miles of a town of 5,000 inhabitants on one side and within two miles of a town of 2,000 on the other side, the owner of the bridge could not satisfy the requirements of the statute by paying a tax of $50, but would have to pay a tax of $75, because the condition to the liability of the maximum tax fixed by the statute existed and such liability was not destroyed by the fact that the condition for the minimum tax also existed. In other words, it was held in effect that where a condition existed which, under the provisions of the statute, would support either tax there fixed (either the maximum or the minimum), the owner of the bridge must pay the maximum. The court adds, which appellant quotes in brief, as follows: "Nor is it of any consequence that the bridge is partly in each of two counties. The state collects but one license tax and issues but one license; and it is not concerned whether this tax is paid in Lauderdale or in Colbert county [in each of which the bridge partly is], nor whether the license is issued through the probate judge of the one or the other county."

So, under the statute here in question, it is equally true that the state collects but one license tax and issues but one license, but the sole question is: What is the amount of that license tax? Is it merely $50, the sum fixed for operating in a city the size of Anniston, or $80, the total of the several sums fixed for operating in three cities or towns of the size of Anniston, Oxford, and Hobson City, respectively? In the case cited, the statute under consideration fixed the amount of the license on the basis of the proximity to towns and cities of the bridge, through and over which the business taxed was

to be done, in the knowledge that a bridge is essentially
a localized thing that could not be extended into other
territory, and that the measure of the tax for operating
it could only be fairly regulated by the size of the lar-
gest nearby town, the travel to and from which over the
bridge would bring the largest revenue from operating
it—large or small in proportion as the town or city was
large or small. Consequently, our Supreme Court held,
in construing that statute, that, where the bridge was
within the same distance of a large and a small town,
the standard by which the amount of the tax was deter-
mined in the statute was the larger, and not the smal-
ler, town. There, not only the language of the statute
under consideration and the conditions to which it was
applied are different from that and those here, but also
the nature of the privilege or business taxed is differ-
ent, in that the business of operating a toll bridge is, as
stated, permanently localized, because a bridge is not
susceptible of extension by its owner in search of new
revenues, while a street railway has the potentiality of
almost indefinite extension.

We are clear therefore that the state license tax re-
quired by the statute under consideration for operating
street railways in this state is, where such railway is
operated in more than one city or town, to be ascertain-
ed by adding together the several sums fixed by the stat-
ute for operating in each of said towns. This is in line
with the general policy, though there may be exceptions,
adopted by the Legislature with respect to practically all
other classes and kinds of business licensed to be car-
ried on in the state; for instance, a license to sell liquor,
cigars, cigarettes, etc., confines the licensee to selling at
one place of business.

In the case of *Jebeles Brothers v. State,* 117 Ala. 174,
23 South. 676, the court had under consideration a stat-

[The State v. Lovejoy.]

ute which provided that every person, firm, or corporation selling cigarettes should pay a license tax therefor as follows: Outside of incorporated towns and cities of 2,000 inhabitants or less, $10; in cities and towns of over 2,000 inhabitants and not over 5,000, $15, etc. And it was held that a license taken out to sell cigarettes in the city of Anniston did not authorize the selling at two separate and distinct places in said city. So we hold that a license to operate a street railway in Anniston does not authorize its operation in Oxford and Hobson City.

The test of the sufficiency of one license is "unity of management, ownership, and locality."—*Hochstadler v. State*, 73 Ala. 24; *Johnson v. State*, 152 Ala. 61, 44 South. 555. While unity of management and ownership of the street railway here in question exists, unity of locality does not, since such railway is operated in three separate and distinct units of territory as fixed by the statute.

It follows that the judgment appealed from must be affirmed.

Affirmed.