178 So.2d 636

**C. C. (Jack) OWEN, Chairman of Alabama Liquefied Petroleum Gas Commission, et al.**

**v.**

**WEST ALABAMA BUTANE COMPANY et al.**

3 Div. 153.

Supreme Court of Alabama.

Sept. 21, 1965.

Richmond M. Flowers, Atty. Gen., Robt. P. Bradley and W. Mark Anderson, III, Asst. Attys. Gen., for appellants.

Hinson & Hamilton, Montgomery, for appellees.

COLEMAN, Justice.

The members of the Alabama Liquefied Petroleum Gas Commission appeal from a decree overruling a motion to dissolve a temporary injunction by which appellants were enjoined from collecting certain permit fees under the Alabama Liquefied Petroleum Gas Act; Act No. 275, 1951 Acts, page 559. See 1958 Recompilation of 1940 Code, Title 26, § 179(57) et seq.

The amended bill prays for declaratory relief and for temporary and permanent injunctions.

Complainants aver that each of them is a liquefied petroleum gas dealer as defined in Act No. 275. Pertinent provisions of the act recite:

"Section 7. INSURANCE AND BONDS REQUIRED; PERMIT.— Before any person shall engage in or continue in the business of selling, distributing, storing or transporting liquefied petroleum gases, except where the liquefied petroleum gas so handled is in quantities of less than one gallon U. S. water capacity and is an integral part of a device for its utilization, or in the business of selling, installing, servicing, repairing or adjusting liquefied petroleum gas containers, tanks or systems, at retail, in the State of Alabama, such person shall make application for, on forms provided by the Commission, and shall first obtain from the Commission a permit, and shall execute and file with the Commission a bond and the insurance herein required.

. . . .

"Section 8. PERMIT FEES.—
Every applicant for a permit, as provided in Section 7 of this Act, shall at
the time of issuance of the permit by
the Commission and annually thereafter
pay to the Commission a minimum permit fee of Two Hundred Fifty Dollars
($250.00); applicants who are engaged
in the business of selling liquefied petroleum gases shall pay a permit fee equal
to one-fourth (1/4) of one per cent
(1%) of his annual gross receipts from
the sale of Liquefied Petroleum Gas
based on dollar volume sales for the
preceding twelve (12) months, said
annual fee however shall not be less
than two hundred fifty nor more than
Five Hundred Dollars ($500.00), which
shall be the maximum fee due under the
provisions of this Act. Said permits
and fees shall be due on October 1st
and delinquent on October 31st of each
year. Every person required to secure
such permit and pay said fees who
fails to do so by said delinquent date
shall incur a penalty of Ten Dollars
($10.00) for each day he is delinquent
in complying with the provisions of this
Section, and said penalty shall be paid
to the Commission before the issuance
of said permit."

Complainants allege that they have paid
for and received from the Commission permits for the year from October 1st, 1963, to
October 31st, 1964, and are operating thereunder; but, subsequent to issuance of the
permit, complainants have received from
respondents under date of December 31,
1963, the following communication:

"TO ALL ALABAMA LP–GAS
DEALERS:

"This Commission has been advised in
a recent ruling by the Attorney General
that each branch operation * having
storage and selling from this storage at
retail must have a separate permit
from the Alabama Liquefied Petroleum
Gas Commission.

"If orders for gas are received and
filled from your branch operation, a
separate permit will be required. If
your storage is only used as stand-by
storage, a separate permit will not be
required.

"These permit fees will be collected as
set forth in the Alabama LP–Gas Act,
based on 1/4 of 1% of gross sales of
LP–Gas from the previous year with a
$250.00 minimum and $500.00 maximum,
due upon receipt of this letter and delinquent thirty days thereafter.
"We are enclosing a copy of the Attorney General's opinion for your information, together with an Application
From to be completed for your Branch
Offices.

"If you have any questions concerning
this matter, please contact the Commission.
 ". . . . . .

" * Normal Branch operations
 . . . . . . ."

Complainants aver that for more than
ten years each of them has been required to
pay for only one permit, but under the
December communication each complainant
will be required to pay for multiple permits,
to their damage and contrary to law.

Appellants argue that, for two reasons,
the court erred in refusing to dissolve the
temporary injunction. Appellants say, first,
that the court erred because the suit is
against the state, and, therefore, forbidden
by Section 14 of Constitution of 1901; and,
second, that the court erred because Act No.
275, when correctly interpreted, requires
every liquefied petroleum gas dealer to obtain and pay for a permit for each separate
place of business in the state.

In support of the argument that the suit
is against the state, appellants cite Wallace
v. Malone, (Ms.), 6 Div. 72, June 19,
1964, where this court held that the trial
court erred in refusing to dissolve a temporary injunction issued against the members of the State Board of Education enjoining them from canceling a contract
made by the Board with complainant in that

case. This court said that the object of the bill ". . . . is by injunction, indirectly to compel the specific performance of a contract of the State, by forbidding all those acts and doings which constitute breach of contract. This may not be done."

This court, however, said also:

" 'Generally speaking, it is the nature of the suit or relief demanded which the courts consider on determining whether a suit against a state officer [or board] is in fact one against the state within the rule of immunity of the state from suit * * *.' 49 Am. Jur., States, Territories, and Dependencies, § 94. State of Alabama v. Norman Tobacco Co., Inc., 273 Ala. 420, 142 So.2d 873."

In State of Alabama v. Norman Tobacco Company, supra, this court affirmed a decree denying the state's motion to discharge and dissolve a temporary injunction which had been granted pending determination of an appeal under § 140, Title 51, Code 1940, from a final assessment by the Department of Revenue. In Norman Tobacco, however, the injunction was not against the collection of a tax. The injunction was against refusing to sell tobacco tax stamps to the taxpayer and from further proceedings until a dispute could be settled.

■ The instant parties make no mention of the principle that a court of equity will not enjoin the collection of a tax, alleged to be illegal, unless there is, in addition to the illegality of the tax, some recognized ground of equitable jurisdiction; Selma Building & Loan Ass'n v. Morgan, 57 Ala. 33; Glass v. Prudential Ins. Co. of America, 246 Ala. 579, 22 So.2d 13; City of Mobile v. Gulf Development Co., 277 Ala. 431, 171 So.2d 247; and we have not considered the effect of this principle. Whether granting the instant injunction violates that principle we do not say.

■■ We do think it must be regarded as settled that a taxpayer may, without violating Section 14 of the Constitution of 1901, maintain a bill for declaratory decree against a state official to construe a taxing statute when a justiciable controversy exists. Curry v. Woodstock Slag Corporation, 242 Ala. 379, 6 So.2d 479; Southall v. Stricos Corporation, 275 Ala. 156, 153 So.2d 234. We are of opinion and hold that the instant suit for declaratory relief is not one against the state which is prohibited by Section 14 of the Constitution.

The substantial point here in controversy is whether Act No. 275 provides for the collection of a permit fee for each place where a liquefied petroleum gas dealer stores gas and from which place he sells at retail.

■ In construing the statute, we observe certain rules. Taxing statutes are to be construed strictly against the taxing power, and doubts must be resolved against the government and in favor of the taxpayer. Gotlieb v. City of Birmingham, 243 Ala. 579, 11 So.2d 363.

■ The construction placed on a statute by the officers authorized to construe and administer the law is entitled to favorable consideration where such statute is ambiguous or of doubtful meaning, and where such construction has for many years controlled the conduct of public business. Glencoe Paving Co. v. Graves, 266 Ala. 154, 158, 94 So.2d 872.

The language of the statute is that "Before any person shall engage in . . . . the business of selling . . . . gases . . . . *in the State of Alabama*, such person . . . . shall first obtain from the Commission *a* permit . . . . ." (Emphasis Supplied.)

Section 8 provides that every applicant for *a* permit shall pay $250.00 and, if selling gases, shall pay *a* permit fee equal to a percentage of his annual gross receipts. We find no provision that the fee paid shall vary according to the number of places from which the taxpayer sells gas.

We note that in levying charges for licenses to sell other commodities, the legislature has employed language which clearly requires the payment of more than one fee when the taxpayer sells from more than one place of business. For example:

§ 462, Title 51, recites:

"Each person dealing in, selling, or purchasing for resale, automobiles, trucks, or other self-propelled vehicles, shall pay an annual state license as provided in this section, and shall pay a county license of one-half the amount of his state license for the use of the counties. The following licenses shall be paid by each dealer, each agent or other person, except agents of a dealer who have procured the licenses required in the following section: In cities and towns of fifty thousand or more inhabitants, one hundred and forty dollars; . . . . In all other places, whether incorporated or not, thirty dollars; provided, a person maintaining more than one place of business in the same city or town for the sale of automobiles, trucks, or other self-propelled vehicles, shall pay an additional license of one-half of the license levied on his principal place of business for each additional place of business; . . . ."

§ 484, Title 51, recites:

"Each retail dealer in cigars, cheroots, stogies, cigarettes, smoking tobacco, chewing tobacco or snuff, or any substitute therefor, either or all, shall pay to the state the following privilege license: In cities of twenty-five thousand inhabitants and over, fifteen dollars; . . . . This privilege license is levied on each place of business owned or operated by retail dealers, whether under the same roof or not. . . . ."

§ 831, Title 51, recites:

"Before any person, firm, or corporation shall engage in or carry on any business or do any act for which a license by law is required, he, they, or it, except as otherwise provided, shall pay to the judge of probate of the county in which it is proposed to engage in or carry on such business or do such act, or to the commissioner of licenses or the state department of revenue, as specifically the amount required for such license, . . . . (a) Whenever a license is levied in this title, there shall be collected both a state and county license for each place of business, except as specifically otherwise provided. . . . ."

§ 831 does not apply to the permit fee imposed by Act No. 275 because that fee is not a tax or license fee "levied in this title," that is, Title 51.

We are of opinion that the language of Act No. 275 does not require taxpayer to purchase a permit for each place of business.

In 1951, on request of the Commission, the attorney general delivered an opinion responding to questions concerning Act No. 275. Inquiry 5 recited as follows:

" '5. Will a company under one name with officers and storage facilities, or either at several localities, be required to obtain one permit or a permit for each locality?" Quarterly Report of Attorney General, October 1, 1951—December 31, 1951, Vol. 65, 5, 6.

The attorney general replied as follows:

"I can find nothing in the act to indicate that a company, operating in the manner described in your fifth inquiry, would be required to obtain a separate permit for each locality in which it operates. On the contrary, the wording of Section 7, supra, indicates that the permit authorizes the 'person,' (as defined in the act) to engage in the business activities enumerated therein 'in the State of Alabama.' I, therefore, conclude that only one permit is required of the company referred to in your fifth inquiry." Quarterly Report of Attorney General, supra, at page 8.

Complainants allege in the bill of complaint that for more than ten years they have been required to buy only one license. We do not understand that this allegation is denied.

The rule of construction, favoring administrative constructions long followed, supports the proposition that the statute does not require more than one license.

Appellants rely on certain cases to support the proposition that for more than one place of business to be operated under a single permit, there must be unity of management, ownership and locality, and that one permit is not sufficient to allow operation of separate branches unless there is also unity of locality.

We do not think the cited cases support such a rule unless the statute expressly so requires.

In Hochstadler v. State, 73 Ala. 24, this court held one license was sufficient.

In Jebeles v. State, 117 Ala. 174, 23 So. 676, this court held that taxpayer could not, under one license, carry on the business of selling cigarettes in more than one place in a city. The opinion notes that the cigarette license tax was imposed by Section 44 of Act No. 566, Laws 1894–95, page 1192; which is an act to amend the revenue laws of the state. Although not referred to in the opinion, § 632 of Code 1886, then in force recites in part:

> "Before any person, firm, or corporation shall engage in, or carry on any business, or do any act, for which a license is by law required, he or they shall pay to the judge of probate of the county in which it is proposed to engage in, or carry on such business, or to do such act, the amount required for such license; . . . . and such license shall not be transferable, nor shall it entitle the holder thereof to carry on any other business, or to do any other act than that named therein, or at any other location than that therein specified."

The express provisions of § 632 seem to require the decision in Jebeles.

In Johnson v. State, 152 Ala. 61, 44 So. 555, the court held that a license to sell liquor at a saloon was not a license to sell at taxpayer's home a half mile from the saloon. This court cited § 4125 of Code 1896, which is the successor of, and in substantially the same language as, § 632 of Code 1886.

In Brown Plumbing & Heating Co. v. McDowell, 240 Ala. 485, 200 So. 104, the court decided that one who had purchased a plumber's license was also liable for a contractor's license. Locality does not seem to have been considered.

In Anniston Electric & Gas Co. v. State, 12 Ala.App. 624, 67 So. 843, the court held that a street car operator operating in more than one city should buy a license for each city. The statute provided that a street railroad company should pay license taxes in cities of several different sizes, a different amount being charged for each size of the city, respectively. The opinion refers to the general policy of the state, without citing, however, § 2402, Code 1907, which is substantially identical with § 4125, Code 1896, and § 632, Code 1886, which we have already discussed.

If there were in the present Code a statute in the language of § 2402, Code 1907, it would afford persuasive support for the argument that the taxpayers in the instant case must have a separate license for each separate place of business, but we have found no such statute. § 2402, Code 1907, appears to have been omitted from the Code of 1923, and the closest thing to it we have found in Code 1940 is § 831, Title 51, already referred to. § 831, however, refers only to licenses levied in Title 51, and the liquefied petroleum gas dealer permit or license is not levied in Title 51.

In Opdyke v. City of Anniston, 16 Ala. App. 436, 78 So. 634, the court was concerned with a municipal ordinance, not a state license tax.

We are of opinion that Act No. 275 requires only one permit for one dealer in this state.

Error is not shown and the decree appealed from is affirmed.

Affirmed.

LAWSON, GOODWYN and MERRILL, JJ., concur.