This is a dispute between the Morgan County Board of Education and the City of Hartselle Board of Education over state funds allocated to Morgan County, which allegedly have been unlawfully diverted to Hartselle. The dispute arises from the fact that the City of Hartselle, once a part of the Morgan County school system, established its own city school system in 1975.
Morgan County filed an action for declaratory judgment seeking construction of Act 1277, Acts of Alabama, 1973 Regular and Special Sessions, Vol. IV, p. 2181. Both Morgan County and Hartselle moved for summary judgment. The circuit court granted summary judgment in favor of Hartselle. We reverse.
Act 1277 authorized the Alabama Public School and College Authority to issue revenue bonds totaling $179,921,000.00 to provide capital improvement funds for public education. Of this amount, $100,000,000.00 were allocated for elementary-secondary systems to be distributed as follows:
Section 8 (c):
 "(1) One hundred thousand dollars ($100,000) shall be paid to each city and county board of education . . .
 "(2) The residue from the one hundred million dollars ($100,000,000) after providing for costs involved in issuing said bonds and (1) above shall be allocated and distributed to city and county boards of education, pro rata, on the basis of teacher units as determined in accordance with the minimum school program for the school year 1973-74 . . ."
By letter dated October 18, 1973, Morgan County was advised by the State Department of Education that the estimated allotment to Morgan County was $1,206,347.00. After bond sales expenses were determined, the precise allocation was fixed at $1,227,633.10.
After creating its own school system in 1975, Hartselle made application to the Authority to receive a portion of the funds generated by the sale of bonds under Act 1277. The Attorney General opined that Hartselle was not entitled to the $100,000.00 allocation under § 8 (c)(1) but was entitled to a portion of the funds allocated to Morgan County under § 8 (c)(2). In response to the opinion, the Authority reallocated the funds previously apportioned to Morgan County under § 8 (c)(2) and gave Hartselle $366,029.70 of the amount.
It is undisputed that the allocation of funds by the Authority under § 8 (c)(2) of Act 1277 is made to the city or county boards of education, computed by multiplying a dollar factor assigned per teacher unit by the number of teacher units in a respective system in the 1973-74 school year.[1] In 1973-74, Alabama had 126 elementary-secondary school systems of which 67 were county systems and 58 were separate city systems.
The Morgan County school system had 342.72 teacher units during the 1973-74 school year. Of this number, 107.9 teacher units were attributable to students taught in four school buildings physically located in Hartselle. Hartselle now operates the four school buildings under its city school system and sought money from the Authority based upon the 107.9 teacher units attributed to these buildings in 1973-74.
The circuit court made its ruling on the basis of its construction of Act 1277. The court allowed the distribution of funds to Hartselle on two grounds:
(1) The Act allocates and distributes the bond proceeds to "teacher units," rather than to school "systems."
(2) If the Act is susceptible to more than one construction, the courts should construe the language to produce equity and fairness. *Page 852 
The fundamental rule of courts in construing acts of the legislature is to ascertain and give effect to the legislative intent. If possible, such intent must be gathered from the language of the legislature itself. Drake v. PennsylvaniaThreshermen and Farmers' Mut. Cas. Ins. Co., 265 Ala. 444,92 So.2d 11 (1957). It is only when the language of the statute is ambiguous or uncertain that the court can resort to considerations of fairness, justice, and policy to ascertain the intent of the legislature. Age-Herald Pub. Co. v.Huddleston, 207 Ala. 40, 92 So. 193 (1921).
We are of the opinion that the circuit court mistakenly concluded that the legislature "chose to peg the allocation and distribution of bond proceeds not to `system' but to `teacher units.'" The Act provides in § 8 (c)(1) that "$100,000 shall be paid to each city and county board of education . . . § 8 (c)(2) provides that the residue "shall be allocated and distributed to city and county boards of education, pro rata, on the basis of teacher units as determined in accordance with the minimum school program for the school year 1973-4. . . ." [Emphasis added.]
It is clear from the above language that the legislature allocated these funds to school boards. Teacher units are not such entities as can receive funds. It is true that the amount of the allocations were based on teacher units, but the allocations were to school boards. A teacher unit is merely a process, or formula, based on the previous years average daily attendance of students and is used to aid in administration of the minimum fund program. Teacher units bear a direct relationship to the number of students within a school system. Teacher units do not exist independently, but only in relation to school boards of education. By definition, the Hartselle system did not have any teacher units in the school year 1973-74, because Hartselle did not have a separate school system at that time.
Teacher units do not have an independent existence. Rather, it is a term of art, or formula, which expresses the number of teachers a county or city school system is allowed under the legislatively created minimum school program. § 16-13-50, et seq., supra. The legislative enactments to which the teacher units have reference, and to which Act 1277 has reference, make it clear that monies made available on the basis of teacher units are paid to county or city boards of education only.
The 107.9 teacher units which were attributable to the buildings located in Hartselle in 1973-74 were undeniably a part of the Morgan County school system. This result follows from the application of the unambiguous language of the Act which allots the funds on the basis of teacher units in 1973-74. For example, if the Act had provided that the allocation and distribution was based on teacher units of 1975-76, then under the statutory scheme Hartselle would come within the Act's provisions.
The circuit court found, and it is argued here, that the result we reach is inequitable because the money should follow the students. A contrary argument is presented in brief of Morgan County. We consider both of these arguments irrelevant to the issue we are called upon to decide. It is the legislature's prerogative to allocate school funds and not the courts. When the legislature expresses itself in unambiguous terms through enactment of a statute, the courts, absent constitutional considerations, are bound thereby.
Our decision on this matter is fully supported by the reasoning of cases from other jurisdictions arising under similar circumstances. State v. Shuck, 273 Mo. 50, 199 S.W. 975
(1917); Sunol School Dist. v. Chipman, 138 Cal. 251, 71 P. 340
(1903); State v. Decker, 87 N.J.Law 431, 95 A. 135 (1915). The Hartselle school system is not entitled to any funds made available to city or county boards of education under § 8 (c)(2) of Act 1277. Summary judgment should have been granted for Morgan County. It is so ordered.
The judgment of the circuit court is hereby reversed and the cause is rendered.
REVERSED AND RENDERED.
TORBERT, C.J., and FAULKNER, JONES, ALMON and EMBRY, JJ., concur.
[1] Teacher units are computed according to the statutory requirements of § 16-13-52, Code of Alabama, 1975. *Page 853