591 So.2d 473 (1991)
CITY OF BIRMINGHAM, et al.
v.
AmSOUTH BANK, N.A., et al.
1900799.
Supreme Court of Alabama.
December 13, 1991.
*474 Robert A. Jones, Jr. of Jones & Davis, P.C. and James C. Huckaby, Jr., Stephen L. Poer, James L. Richey and Ross N. Cohen of Haskell Slaughter Young & Johnston, P.A., Birmingham, for appellants.
James D. Pruett, Birmingham, for appellees.
Marshall Timberlake, William E. Shanks, Jr., James A. Bradford and Dana L. Thrasher of Balch & Bingham, Birmingham, for amici curiae Alabama Power Co., Energen Corp., O'Neal Steel, Inc., South Central Bell Telephone Co., Stockham Valves & Fittings, Inc. and Torchmark Corp.
SHORES, Justice.
The City of Birmingham ("the City") appeals from a judgment declaring the application and scope of the Birmingham occupational license fee (the "Occupational Tax") levied under Ordinance No. 70-75, as amended (the "Ordinance"). The appellees are AmSouth Bank, N.A.; AmSouth Financial Corporation; AmSouth Investment Services, Inc.; AmSouth Mortgage Company, Inc.; and the First National Bank of Birmingham, Alabama (collectively referred to as "AmSouth").
Following an audit of AmSouth in 1989 ("the audit"), the City assessed AmSouth $130,101.21 for unpaid occupational tax, interest, and penalties, for the period beginning January 1, 1984, and ending December 21, 1988. The assessment was on certain noncash compensation and indirect cash compensation. AmSouth paid $14,607 for occupational tax due on one item included in the audit, but objected to the assessment on the remaining items, leaving a balance due on the assessment of $115,494.21. AmSouth filed this declaratory action in Jefferson County, requesting, in pertinent part, the following:
"[A declaration] that [the City] has legal authority to assess the Occupational License Tax only upon (a) moneys paid, and the monetary value of other considerations transferred, (b) by an employer (c) to or for the benefit of the employee (d) during the course of employment (e) as consideration for services rendered by the employee to the employer in [the City]."
The City answered AmSouth's complaint and filed a counterclaim, seeking to reduce the unpaid portion of the assessment to judgment. Subsequently, the City amended its answer to allege affirmative defenses, and amended its counterclaim to seek a judgment declaring that these forms of compensation were properly taxable under the Ordinance. After the City learned of the existence of additional forms of what it alleged was compensation that AmSouth paid to its employees, it scheduled another audit to determine whether AmSouth owed occupational tax with respect to these additional *475 forms of "compensation" and filed an action against AmSouth pursuant to Alabama Code 1975, § 11-51-150 et seq., seeking an accounting from AmSouth for a determination of what, if any, occupational taxes AmSouth might owe with respect to these additional forms of "compensation." The trial court consolidated these suits for trial, and after hearing ore tenus evidence and after reviewing testimony from numerous depositions, found as follows:
"The City's interpretation of the provisions of the Ordinance and its application of the Occupational Tax has, prior to the current audit of [AmSouth], been limited to base wages and salaries, even though the appropriate City officials were aware that other types of compensation or benefits existed."
Based on that finding, the trial court held as follows:
"One: ... The City, therefore, may not now change its interpretation of the Ordinance and make its change retroactive so as to require the payment of interest and penalties by [AmSouth].
"Two: Due to the City's interpretation of the Ordinance since its enactment in 1970, the Occupational Tax is limited to direct compensation, or the base wages and salaries, including cash bonuses, which are subject to being paid directly to employees. Items generally termed `fringe benefits' such as profit sharing plans, thrift plans, stock option plans, group life insurance and medical benefits are not subject to the Occupational Tax.
"Three: To the extent that the City has not taxed retirement benefits, or other payments made to an individual after the individual has terminated employment, it may not now change its interpretation of the Ordinance to include those payments under the Occupational Tax. If the City has not taxed payments from a particular type of plan received by a person after employment has terminated, it may not tax the same type of payments made to an individual whose employment has not terminated.
"Four: Portions of direct compensation which are subject to the Occupational Tax, but which are placed in plans which are qualified under ERISA, must either be made subject to the withholding and reporting provisions of the Ordinance at the time the employer makes his contribution to the ERISA plan, or must be reported by the employee at the time of withdrawal. The employer is not responsible for withholding and reporting withdrawals by the employee.
"Five: Any changes in the application of the Ordinance must be approved by the City Council."
The trial court entered a judgment as to the above-cited issues and made it final pursuant to Rule 54(b), A.R.Civ.P. The City appeals.
The Ordinance contains the following provisions pertinent to this appeal:
"Section 4. EMPLOYERS TO WITHHOLD LICENSE FEES AND FILE RETURNS. Each employer shall deduct from each payment due each employee the amount of the license fee measured by one per centum (1%) of the compensation due each employee beginning on the 1st day of December, 1970."
"Section 1. DEFINITIONS.
"....
"(f) The words `Gross Receipts' and `Compensation' shall have the same meaning, and both words shall mean and include the total gross amount of all salaries, wages, commissions, bonuses or other money payment of any kind, or any other considerations having monetary value, which a person receives from or is entitled to receive from or be given credit for by his employer for any work done or personal services rendered in any trade, occupation or profession, including any kind of deductions before `Take Home' pay is received: but the words `Gross Receipts' and `Compensation' shall not mean or include amounts paid to traveling salesmen or other workers as allowance or reimbursement for traveling or other expenses incurred in the business of the employer, except to the extent of the *476 excess of such amounts over such expenses actually incurred and accounted for by the employee to the employer."
"Section 8. REGULATIONS MAY BE PROMULGATED. The Director of Finance may prescribe, adopt, promulgate and enforce reasonable rules and regulations not in conflict with this ordinance relating to any matter or thing pertaining to the administration and enforcement of the provisions of this ordinance, including but not limited to provisions for the re-examination and correction of returns as to which overpayment or underpayment is claimed or found to have been made, and the regulations so promulgated shall be binding upon all licensees and employers."
(Emphasis added.)
The director of finance promulgated the "Rules and Regulations for Birmingham Occupational License Tax" ("the Rules and Regulations"), effective December 1, 1970, in accordance with the authority given him in § 8 of the Ordinance. The Rules and Regulations read, in pertinent part, as follows:
"EMPLOYERS AFFECTED:
"Employers are required to make a payroll deduction at the rate of 1% on all earnings paid to the employees for work done within the corporate limits of the City of Birmingham.
"EARNINGS USED TO MEASURE THE TAX:
"The tax is measured as a percentage of all salaries, wages or other compensation having monetary value. No deductions are allowable for vacation pay, holiday pay, sick pay and similar earnings. Neither the employee's place of residence nor the employer's place of payment affect the determination of the amount of tax payable."
Section 4 of the ordinance and § 1(f) set out above leave no doubt that the City Council intended to impose the occupational tax on "all salaries, wages, commissions, bonuses or other money payment of any kind, or any other considerations having monetary value." The regulations promulgated pursuant to the ordinance by the director of finance provide that the tax is to be measured as a percentage of "all salaries, wages or other compensation having monetary value". This language is consistent with the language of the ordinance. However, the regulations also state that "employers are required to make a payroll deduction at the rate of 1% on all earnings paid to the employees for work done within the corporate limits of the City." This language in the regulations is more restrictive than the ordinance and the language of the regulation measuring the tax at a percentage of all salaries, wages, or other compensation having monetary value. Therefore, an ambiguity exists between the ordinance and the regulation and between two provisions of the regulation itself.
City ordinances are subject to the same general rules of construction as are acts of the legislature. S & S Distributing Co. v. Town of New Hope, 334 So.2d 905 (Ala.1976). In John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala.1988), quoting from Clark v. Houston County Comm'n, 507 So.2d 902, 903-04 (Ala.1987), this Court set out the following general rules of statutory construction, which also apply to city ordinances:
"`The fundamental rule of statutory construction is to ascertain and give effect to the intent of the [City Council] in enacting the [Ordinance]. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the [City Council] should be gathered from the language of the [Ordinance] itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala. 1978). If the [Ordinance] is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the [Ordinance] and examine results that will flow from giving the language in question one particular meaning rather than another. Studdard *477 v. South Central Bell Telephone Co., 356 So.2d 139 (Ala.1978); League of Women Voters v. Renfro, supra.'"
A basic rule of statutory construction is that ambiguous tax statutes are construed against the taxing authority and in favor of the taxpayer. Alabama Farm Bureau Mutual Casualty Insurance Co. v. City of Hartselle, 460 So.2d 1219 (Ala. 1984); Owen v. West Alabama Butane Co., 278 Ala. 406, 178 So.2d 636 (1965); see, also, Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932). The Ordinance is a tax ordinance.
Another basic rule of statutory construction is that a long-standing interpretation given a statute or ordinance by officials charged with its administration is highly persuasive as to the intent of the legislative body when it enacted the statute or ordinance and, consequently, the meaning of the statute or ordinance. This is especially so where the long-standing interpretation has controlled how the public has conducted its business. See S & S Distributing Co. v. Town of New Hope, supra; Owen v. West Alabama Butane Co., 278 Ala. 406, 178 So.2d 636 (1965). As this Court stated in International Union of Operating Engineers, Local Union No. 321 (AFL-CIO) v. Water Works Board of the City of Birmingham, 276 Ala. 462, 465, 163 So.2d 619, 623 (1964):
"[W]hen an administrative construction by proper officials is fair and reasonable and has been followed for the prescriptive period of twenty years [20 years] or longer, the courts are not disposed to alter that construction merely because the highest officials may have changed their minds about the matter under consideration."
The trial court found, and the evidence supports its finding, that up until the 1989 audit the City had never interpreted the ordinance, or applied the occupational tax, to any compensation other than base wages and salaries, although the ordinance clearly permits the application of the tax to any compensation having any monetary value. For this reason, apparently applying some theory of estoppel, the trial court held that the City could not now impose the tax on compensation other than base salary. In this regard the trial court erred. The Ordinance itself is unambiguous. It clearly provides for a tax upon any compensation having any monetary value. The regulation also provides that the tax is to be measured as a percentage of all salaries, wages, or other compensation having monetary value. It is only because the regulation states that employers are required "to make payroll deductions at the rate of 1% on all earnings paid to employees" that an ambiguity exists. This ambiguity in the regulation, which conflicts with the Ordinance itself, can not bar the City from now insisting that the Ordinance be given its plain meaning.
There is no reason why the City can not now begin to apply the tax as the Ordinance provides, i.e., to make it applicable to compensation of all kinds having a monetary value. To hold that the City can not now impose the tax as clearly provided for by the Ordinance defeats the clear purpose of the Ordinance.
We reverse the trial court's holding that the City may not now change its interpretation of the Ordinance. We affirm its holding that the new interpretation may not be applied retroactively.
We reverse the trial court's holding that items generally termed "fringe benefits," such as profit sharing plans, thrift plans, stock option plans, group life insurance, and medical benefits, are not subject to the occupational tax. We hold that the City is free to apply the occupational tax to these forms of compensation, but that it may not do so retroactively.
We affirm the trial court's holding that to the extent that the City has not taxed retirement benefits, or other payments made to an individual after the individual has terminated employment, it may not now change its interpretation of the Ordinance to include those payments under the occupational tax.
We reverse the trial court's holding that if the City has not taxed payments from a particular type of plan received by a person *478 after employment has terminated, it may not tax the same type of payments made to an individual whose employment has not terminated. We hold that the City may, from the date of this opinion, tax any form of compensation, as defined by the Ordinance, that any employee within the City of Birmingham is paid.
We affirm the trial court's holding that portions of direct compensation that are subject to the occupational tax, but which are placed in plans that are qualified under ERISA, must either be made subject to the withholding and reporting provisions of the Ordinance at the time the employer makes its contribution to the ERISA plan, or be reported by the employee at the time of withdrawal.
We reverse the trial court's holding that any changes in the application of the Ordinance must be approved by the City Council.
The judgment of the trial court is affirmed in part and reversed in part.
AFFIRMED IN PART AND REVERSED IN PART.
HORNSBY, C.J., and MADDOX, ALMON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs in the result in part and dissents in part.
HOUSTON, Justice (concurring in the result in part and dissenting in part).
I concur in the result reached by the majority insofar as it does not permit the City to collect back taxes, penalties, and interest; however, I disagree with both the rationale and the result reached by the majority insofar as it holds that the rules and regulations promulgated by the director of finance are void as a matter of law.
Looking to the language of Section 8 of the Ordinance, which specifically states that the regulations promulgated by the director of finance are binding on AmSouth as an employer, one sees that AmSouth was required to make a payroll deduction of 1% on all earnings paid to employees for work done within the corporate limits of the Citythat is, AmSouth was required to make a payroll deduction of 1% on all salaries, wages, or other compensation having monetary value paid to employees for work done within the City's corporate limits. Section 4 of the Ordinance requires employers to deduct from each payment due each employee one per centum of compensation due. The Rules and Regulations promulgated in accordance with Section 8 of the Ordinance, which Rules and Regulations "shall be binding upon all ... employers," including AmSouth, require that employers make a payroll deduction of 1% on all earnings paid to employees. "Due" is defined in Black's Law Dictionary 499 (6th ed. 1990) as "[o]wing; payable; justly owed.... Owed, or owing, as distinguished from payable. A debt is often said to be due from a person where he is the party owing it, or primarily bound to pay, whether the time for payment has or has not arrived." The phrase "earnings paid to the employee[s]" is much less inclusive than the phrase "compensation due each employee." While the definition of the word "earnings" and the definition of the word "compensation" may differ, I need not address this issue, for it is apparent that the phrase "earnings paid to the employee[s]" and the phrase "compensation due each employee" have different meanings. Under the Ordinance, employers such as AmSouth were required to deduct the tax on earnings paid to an employee and compensation due an employee. Reasonable persons would recognize that these two phrases do not mean the same thing; therefore, an ambiguity exists. See S & S Distributing Co. v. Town of New Hope, 334 So.2d 905 (Ala.1976).
Ambiguous tax statutes or ordinances are construed against the taxing authority and in favor of the taxpayer. Alabama Farm Bureau Mutual Casualty Insurance Co. v. City of Hartselle, 460 So.2d 1219 (Ala.1984); Owen v. West Alabama Butane Co., 278 Ala. 406, 178 So.2d 636 (1965); see, also, Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932). Following this rule, *479 the deduction is based on earnings paid, not compensation due.
In this case, the trial court, after having heard ore tenus evidence, found the following:
"Since 1970 the City has collected the Occupational Tax and has conducted audits to ensure the employers' compliance with the withholding and reporting requirements. In so doing, the Ordinance has only been applied to base salary or direct compensation. It has not been applied to the value of the personal use of [the items at issue]. Responsible city officials ... candidly admitted that they were aware of the existence of various types of these ... benefits although they were not necessarily aware of which such benefits an individual employer might have in effect. The evidence in this case shows that when ... the City first notified [AmSouth] of the current audit, [it] requested `all' of [AmSouth's] records. [AmSouth's] representatives then asked which specific records [the City] wanted and ... provided [the City] with those records. [AmSouth] did not withhold any records that [the City] asked to see, nor did it withhold records on any subjects or specific programs which it was asked to produce. However, [AmSouth] did not produce any records on benefit plans unless there was a request for the specific records or an inquiry as to a specific type of plan. The court does find from the evidence that [AmSouth] produced all records the City requested that it produce. The evidence shows that the procedures followed in this audit, by both the City and by [AmSouth], are the same procedures which have been followed in prior audits. The court further finds that in the audit of [AmSouth] which preceded the current audit, records produced by [AmSouth] did show payments to employees which were made pursuant to various ... benefit plans and which, on the face of the records, were not included in the withholding and reporting requirements of the Ordinance. The treatment, or omission of the payments under those plans, was not contested in the prior audit.
"In addition to the audits of private employers, and the application of the Occupational Tax to only the base wages or salaries, the City itself has historically provided automobiles to certain department heads. This practice was known to City officials and in 1985 when the federal Internal Revenue Service changed its taxing policy on private use of automobiles, a memorandum was circulated by the Mayor's Office which established the revised treatment which was to be given to personal use of automobiles for federal tax purposes. Until this case was filed, the City never applied the Occupational Tax or the provisions of the Ordinance to the private use of automobiles by City employees.
"The court finds from the evidence that the City has never interpreted the provisions of the Ordinance or applied the Occupational Tax to any wages or salaries other than base wages or salaries, or direct compensation, prior to the current audit of [AmSouth]. This limitation of the application of the Occupational Tax has been made even though the appropriate City officials were generally aware of various types of ... benefit programs in use by employers and were specifically aware of the City's own use and treatment of the private use of City automobiles by City employees.

"During the current audit of [AmSouth], the City began questioning whether or not additional items should be included within the Occupational Tax. The City's representatives carefully documented various items, held discussions among themselves and decided that the items under consideration in this case should be included. For the first time [in 20 years], the City adopted guidelines to be applied to various forms of... benefit plans.

"....
"It is, therefore, the opinion of the court that the Occupational Tax is only applicable to base wages and salaries, or other items of direct compensation. This *480 would include cash bonuses paid directly to employees."
(Emphasis added.)
The occupational tax is applicable only to earnings paid to employees by employers until the director of finance changes the Rules and Regulations promulgated by him. Therefore, based on the foregoing, under the facts of this case, and applying the ore tenus standard of review, see Paige v. State Farm Fire & Casualty Co., 562 So.2d 241 (Ala.1990), I would hold that the trial court was not plainly and palpably erroneous in its interpretation of the scope of taxation of the Ordinance prior to any change in these Rules and Regulations.
The Rules and Regulations promulgated by the director of finance in accordance with Section 8 of the Ordinance created an ambiguity by imposing a tax less inclusive than that permitted by the Ordinance, for the Ordinance bound employers, such as AmSouth, to follow the regulations promulgated. Because the Ordinance itself is unambiguous except to the extent that it binds employers, such as AmSouth, to follow the regulations promulgated by the director of finance (Section 8), the ambiguity can be eliminated if the director of finance changes the Rules and Regulations to allow the City to tax to the full extent authorized by Section 4 of the Ordinance.