I concur in the result reached by the majority insofar as it does not permit the City to collect back taxes, penalties, and interest; however, I disagree with both the rationale and the result reached by the majority insofar as it holds that the rules and regulations promulgated by the director of finance are void as a matter of law.
Looking to the language of Section 8 of the Ordinance, which specifically states that the regulations promulgated by the director of finance are binding on AmSouth as an employer, one sees that AmSouth was required to make a payroll deduction of 1% on all earnings paid to employees for work done within the corporate limits of the City — that is, AmSouth was required to make a payroll deduction of 1% on all salaries, wages, or other compensation having monetary value paid to employees for work done within the City's corporate limits. Section 4 of the Ordinance requires employers to deduct from each payment due
each employee one per centum of compensation due. The Rules and Regulations promulgated in accordance with Section 8 of the Ordinance, which Rules and Regulations "shall be binding upon all . . . employers," including AmSouth, require that employers make a payroll deduction of 1% on all earnings paid to
employees. "Due" is defined in Black's Law Dictionary 499 (6th ed. 1990) as "[o]wing; payable; justly owed. . . . Owed, or owing, as distinguished from payable. A debt is often said to be due from a person where he is the party owing it, or primarily bound to pay, whether the time for payment has or has not arrived." The phrase "earnings paid to the employee[s]" is much less inclusive than the phrase "compensation due each employee." While the definition of the word "earnings" and the definition of the word "compensation" may differ, I need not address this issue, for it is apparent that the phrase "earnings paid to the employee[s]" and the phrase "compensation due each employee" have different meanings. Under the Ordinance, employers such as AmSouth were required to deduct the tax on earnings paid to an employee and compensation due an employee. Reasonable persons would recognize that these two phrases do not mean the same thing; therefore, an ambiguity exists. See S S Distributing Co. v. Town of New Hope,334 So.2d 905 (Ala. 1976).
Ambiguous tax statutes or ordinances are construed against the taxing authority and in favor of the taxpayer. Alabama FarmBureau Mutual Casualty Insurance Co. v. City of Hartselle,460 So.2d 1219 (Ala. 1984); Owen v. West Alabama Butane Co.,278 Ala. 406, 178 So.2d 636 (1965); see, also, Miller v. StandardNut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422
(1932). Following this rule, *Page 479 
the deduction is based on earnings paid, not compensation due.
In this case, the trial court, after having heard ore tenus
evidence, found the following:
 "Since 1970 the City has collected the Occupational Tax and has conducted audits to ensure the employers' compliance with the withholding and reporting requirements. In so doing, the Ordinance has only been applied to base salary or direct compensation. It has not been applied to the value of the personal use of [the items at issue]. Responsible city officials . . . candidly admitted that they were aware of the existence of various types of these . . . benefits although they were not necessarily aware of which such benefits an individual employer might have in effect. The evidence in this case shows that when . . . the City first notified [AmSouth] of the current audit, [it] requested 'all' of [AmSouth's] records. [AmSouth's] representatives then asked which specific records [the City] wanted and . . . provided [the City] with those records. [AmSouth] did not withhold any records that [the City] asked to see, nor did it withhold records on any subjects or specific programs which it was asked to produce. However, [AmSouth] did not produce any records on benefit plans unless there was a request for the specific records or an inquiry as to a specific type of plan. The court does find from the evidence that [AmSouth] produced all records the City requested that it produce. The evidence shows that the procedures followed in this audit, by both the City and by [AmSouth], are the same procedures which have been followed in prior audits. The court further finds that in the audit of [AmSouth] which preceded the current audit, records produced by [AmSouth] did show payments to employees which were made pursuant to various . . . benefit plans and which, on the face of the records, were not included in the withholding and reporting requirements of the Ordinance. The treatment, or omission of the payments under those plans, was not contested in the prior audit.
 "In addition to the audits of private employers, and the application of the Occupational Tax to only the base wages or salaries, the City itself has historically provided automobiles to certain department heads. This practice was known to City officials and in 1985 when the federal Internal Revenue Service changed its taxing policy on private use of automobiles, a memorandum was circulated by the Mayor's Office which established the revised treatment which was to be given to personal use of automobiles for federal tax purposes. Until this case was filed, the City never applied the Occupational Tax or the provisions of the Ordinance to the private use of automobiles by City employees.
 "The court finds from the evidence that the City has never interpreted the provisions of the Ordinance or applied the Occupational Tax to any wages or salaries other than base wages or salaries, or direct compensation, prior to the current audit of [AmSouth]. This limitation of the application of the Occupational Tax has been made even though the appropriate City officials were generally aware of various types of . . . benefit programs in use by employers and were specifically aware of the City's own use and treatment of the private use of City automobiles by City employees.
 "During the current audit of [AmSouth], the City began questioning whether or not additional items should be included within the Occupational Tax. The City's representatives carefully documented various items, held discussions among themselves and decided that the items under consideration in this case should be included. For the first time [in 20 years], the City adopted guidelines to be applied to various forms of . . . benefit plans.
". . . .
 "It is, therefore, the opinion of the court that the Occupational Tax is only applicable to base wages and salaries, or other items of direct compensation. This *Page 480 
would include cash bonuses paid directly to employees."
(Emphasis added.)
The occupational tax is applicable only to earnings paid to employees by employers until the director of finance changes the Rules and Regulations promulgated by him. Therefore, based on the foregoing, under the facts of this case, and applying the ore tenus standard of review, see Paige v. State Farm Fire Casualty Co., 562 So.2d 241 (Ala. 1990), I would hold that the trial court was not plainly and palpably erroneous in its interpretation of the scope of taxation of the Ordinance prior to any change in these Rules and Regulations.
The Rules and Regulations promulgated by the director of finance in accordance with Section 8 of the Ordinance created an ambiguity by imposing a tax less inclusive than that permitted by the Ordinance, for the Ordinance bound employers, such as AmSouth, to follow the regulations promulgated. Because the Ordinance itself is unambiguous except to the extent that it binds employers, such as AmSouth, to follow the regulations promulgated by the director of finance (Section 8), the ambiguity can be eliminated if the director of finance changes the Rules and Regulations to allow the City to tax to the full extent authorized by Section 4 of the Ordinance.