This is a zoning case.
In March 1990, Luther S. Pate IV sued the City Council of Tuscaloosa (City Council), requesting that the trial court declare § 35-105(B) of the zoning ordinance of Tuscaloosa (the 1986 ordinance) invalid. Specifically, Pate claimed that the 1986 ordinance, as it prohibited the construction of new off-site billboards in certain restricted areas, was not in furtherance of Ala. Code 1975, § 11-52-72, and that certain provisions of the 1986 ordinance had been enforced arbitrarily and capriciously, while other provisions were not enforced.
Pate later amended his complaint by adding the City of Tuscaloosa as a party defendant (hereafter, the City of Tuscaloosa and the City Council will be referred to collectively as "the City"). Subsequently, Pate again amended his complaint by claiming that the 1986 ordinance violated certain provisions of the Sherman Anti-Trust Act. In an amended answer, the City claimed immunity as to this contention.
Following an ore tenus proceeding on February 3, 1992, the parties submitted briefs in support of their respective positions. Later, the City filed a motion to strike aFirst Amendment argument, claiming *Page 407 
that such argument was raised for the first time by Pate in an addendum to his post-trial brief.
On March 10, 1992, the trial court entered a judgment in favor of the City as to Pate's attack on the validity, as applied, of the 1986 ordinance, and as to Pate's claim of a violation of the Sherman Anti-Trust Act. The trial court did not address Pate's First Amendment argument, however, "since it was neither pled nor proven." Pate appealed.
First, Pate argues that the trial court erred in upholding the validity of the 1986 ordinance, since, according to him, the purpose of the 1986 ordinance is to advance aesthetic values in its regulation of billboards. Pate contends that such a purpose exceeds the City's zoning power as conferred upon it by Ala. Code 1975, § 11-52-72.
We note initially that zoning is a legislative matter and, therefore, that judicial review of such action is very restricted. Dyas v. City of Fairhope, 596 So.2d 930
(Ala.Civ.App. 1992). In City of Tuscaloosa v. Bryan, 505 So.2d 330 (Ala. 1987), our supreme court stated the following:
 "The passage of a zoning ordinance is a legislative act, and it is well established that municipal ordinances are presumed to be valid and reasonable, to be within the scope of the powers granted municipalities to adopt such ordinances, and are not to be struck down unless they are clearly arbitrary and unreasonable. If the adoption of the ordinance raises questions upon which reasonable differences may exist in view of all the circumstances, and the wisdom of the ordinance is fairly debatable, then the action of a municipal governing body in adopting the ordinance will not be deemed arbitrary, a court being unwilling under such circumstances to substitute its judgment for that of the municipal governing body acting in a legislative capacity."
Id. at 336.
Furthermore, when a trial court makes findings of fact based upon ore tenus evidence, those findings will not be disturbed on appeal unless they are clearly erroneous or manifestly unjust. Dyas, 596 So.2d 930.
In Ala. Code 1975, § 11-52-70, municipalities in Alabama are empowered to divide their territories into districts or zones and to regulate those districts or zones as to the kind, character, and use of structures and improvements. In §11-52-71, local legislative bodies similarly are authorized to regulate the construction and use, among other things, of buildings, structures, or land. Section 11-52-72 provides:
 "Such regulations shall be . . . designed to lessen congestion in the streets, to secure safety from fire, panic and other dangers, to promote health and the general welfare, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue concentration of population and to facilitate the adequate provision of transportation. . . ."
The 1986 ordinance stated the following, among other things, as its purpose:
 "1. Purpose: [T]his section is enacted to protect the health, safety, welfare, convenience and enjoyment of the general public by providing for uniform standards for the location, spacing, height, setback, lighting and other regulation of off-site signs within the City. . . . The purposes of this section are as follows:
". . . .
 "c. to protect the safety and efficiency of the City's transportation network by reducing the confusion and distraction to motorists, reducing collision hazards and enhancing the motorists' ability to see pedestrians, obstacles, other vehicles and traffic signs."
The record revealed that the 1986 ordinance, as amended, prohibited future construction of off-site billboards within a certain restricted area. Existing billboards were allowed to remain, however, and were, in effect, "grandfathered" in as a prior non-conforming use and allowed to remain. *Page 408 
Pate, who owns an outdoor advertising business, also owns property within the restricted area. According to him, there are two other billboard companies in the community, only one of which owns billboards within the restricted area. Pate testified that he requested a variance to place an off-site billboard on his property, but his request was denied, and consequently, he filed this suit.
The bulk of the testimony was given by John Straley and David Griffin III. Straley, director of the City's Community Planning and Development Department, testified as to the application of the 1986 ordinance and as to the City's concern for promoting aesthetics and preserving areas of historical significance.
Straley also testified, however, about traffic safety concerns involving billboards within the restricted area. According to him, the configuration of the restricted area involves a five-way intersection where traffic is diverted from Interstate 359 in Tuscaloosa to Lurleen Wallace Boulevard, and where 12th Street and 26th Avenue also converge. Straley stated that Pate's property is located adjacent to this intersection. Straley testified that, in his opinion as a professional city planner, billboards potentially impact traffic safety because of their features, which tend to be distracting to motorists. For example, Straley stated that motorists, either intentionally or unintentionally, tend to take their eyes off traffic lights in an effort to see billboards.
David Griffin III, the City's traffic engineer, also testified about traffic safety concerns relating to the 1986 ordinance. According to Griffin, motorists can process only so much information as they drive, and other information which is unrelated to the operation of the vehicle can cause distractions, possibly reducing traffic safety. Griffin testified that the intersection near Pate's property involves a controlled access roadway, a decreasing speed limit, traffic signals, intersecting roads, pedestrian crosswalks, and commercial establishments.
Despite such testimony, Pate argues in his brief that traffic safety concerns are merely a "smoke screen" used to veil the City's aesthetic pursuits. Since, according to Pate, aesthetics is an improper purpose for zoning regulation, Pate argues that the 1986 ordinance should be invalidated.
We disagree and refuse to invalidate the 1986 ordinance. Without addressing the propriety or impropriety of aesthetics as a purpose for zoning regulation by municipalities in Alabama, we hold that there is ample evidence regarding traffic safety concerns to satisfy the standards stated previously in Ala. Code 1975, § 11-52-72, and City of Tuscaloosa v. Bryan,505 So.2d 330.
Second, Pate argues that the 1986 ordinance is invalid because, he says, its distinction between on-site and off-site signs results in a content-based discrimination, thereby violating the First Amendment of the United States Constitution.
As noted earlier, the trial court found that Pate had not presented this issue properly and, therefore, refused to consider it. Pate contends on appeal, however, that theFirst Amendment claim was raised below by his complaint and by the evidence presented during trial. Specifically, Pate claims that references to the distinction between on-site and off-site signs were sufficient to at least invoke an amendment of the pleadings pursuant to Rule 15(b), A.R.Civ.P.
Determinations of whether or not an issue has been tried by the express or implied consent of the parties, or whether pleadings are deemed to be amended to conform to the evidence are within the discretion of the trial court and will not be reversed absent an abuse of such discretion. McCollum v.Reeves, 521 So.2d 13 (Ala. 1987).
As noted by the City in its brief, the first explicit mention of a First Amendment claim by Pate was in his "ADDENDUM TO MEMORANDUM BRIEF" filed with the trial court two weeksafter trial. Pate correctly points out, however, that some trial testimony was elicited which noted the on-site/off-site distinction created because *Page 409 
of the fact that the 1986 ordinance addressed only off-site signs. Nonetheless, the record evidence prior to and during trial is devoid of any mention of the First Amendment, of any possible content-based discrimination, or of a request by Pate to have the 1986 ordinance declared invalid on that ground. As acknowledged by Pate in his brief on appeal, constitutional issues not raised before the trial court are not to be considered on appeal. Olympia Spa v. Johnson, 547 So.2d 80
(Ala. 1989).
After reviewing the record, we cannot say that the trial court abused its discretion by not considering Pate'sFirst Amendment claim. McCollum, 521 So.2d 13. Consequently, we pretermit consideration of Pate's substantive argument based onFirst Amendment grounds. Olympia Spa.
Next, Pate argues that the 1986 ordinance is invalid because, according to him, it creates a monopoly, in violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1-2.
In its order, the trial court held that the City enjoyed immunity as to this claim, based on the trial court's interpretation of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307,87 L.Ed. 315 (1943), and City of Columbia v. Omni OutdoorAdvertising, Inc., 499 U.S. 365, 111 S.Ct. 1344,113 L.Ed.2d 382 (1991). Pate contends, however, that the facts of this case are distinguishable from those in City of Columbia and, therefore, that the trial court's holding of immunity was in error.
Writing for the Supreme Court of the United States, Justice Scalia stated the following in City of Columbia:
 "In the landmark case of Parker . . ., we rejected the contention that a program restricting the marketing of privately produced raisins, adopted pursuant to California's Agricultural Prorate Act, violated the Sherman Act. Relying on principles of federalism and state sovereignty, we held that the Sherman Act did not apply to anticompetitive restraints imposed by the States 'as an act of government.' . . .
 "Since Parker emphasized the role of sovereign States in a federal system, it was initially unclear whether the governmental actions of political subdivisions enjoyed similar protection. In recent years, we have held that Parker immunity does not apply directly to local governments. . . . We have recognized, however, that a municipality's restriction of competition may sometimes be an authorized implementation of state policy, and have accorded Parker immunity where that is the case.
 ". . . It could be argued, however, that a municipality acts beyond its delegated authority, for Parker purposes, whenever the nature of its regulation is substantively or even procedurally defective. On such an analysis it could be contended, for example, that the city's regulation in the present case was not 'authorized' by S.C. Code § 5-23-10 (1976), see n. 3, supra, if it was not, as that statute requires, adopted 'for the purpose of promoting health, safety, morals, or the general welfare of the community.' . . . We agree with [such an argument], and believe that in order to prevent Parker from undermining the very interests of federalism it is designed to protect, it is necessary to adopt a concept of authority broader than what is applied to determine the legality of the municipality's action under state law. . . . It suffices for the present to conclude that here no more is needed to establish, for Parker purposes, the city's authority to regulate than its unquestioned zoning power over the size, location, and spacing of billboards.
 "Besides authority to regulate, however, the Parker defense also requires authority to suppress competition — more specifically, 'clear articulation of a state policy to authorize anticompetitive conduct' by the municipality in connection with its regulation. . . . We have rejected the contention that this requirement can be met only if the delegating statute explicitly permits the displacement of competition. It is enough, we have held, if suppression of competition is the 'foreseeable result' of what the statute authorizes. *Page 410 
That condition is amply met here. The very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition, particularly on the part of new entrants. A municipal ordinance restricting the size, location, and spacing of billboards (surely a common form of zoning) necessarily protects existing billboards against some competition from newcomers."
Id., 499 U.S. at ___, 111 S.Ct. at 1348-50. (Citations omitted.) (Emphasis in original.)
Justice Scalia later "reiterate[d] that, with the possible market participant exception, any action that qualifies as state action is 'ipso facto . . . exempt from the operation of the antitrust laws.' " Id., 499 U.S. at ___, 111 S.Ct. at 1353. (Emphasis in original.) Earlier, the "market participant exception" was described as being where the state acts, not in a regulatory capacity, but as a commercial participant in a particular market. City of Columbia. Such is not the case here.
Pate argues, however, that the present case is distinguishable from City of Columbia because, there, South Carolina's zoning enabling statute, which empowered Columbia's billboard restrictions, was much broader than Alabama's counterpart, Ala. Code 1975, § 11-52-72. According to Pate, therefore, the 1986 ordinance, enacted by the City under a stricter enabling statute, is not an "authorized implementation of state policy," City of Columbia, 499 U.S. at ___,111 S.Ct. at 1349, and, consequently, the City's prohibition of new off-site billboards should not have been afforded Parker
immunity.
We disagree and hold that City of Columbia controls this case. First, S.C. Code, § 6-7-710 (1976) (granting power for zoning), states that municipal regulations concerning buildings and other structures "shall . . . be designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers, to promote the public health and the general welfare . . . [and] to facilitate the adequate provision of transportation. . . ." That language is nearly verbatim the language in Ala. Code 1975, §§ 11-52-70 through -72. Second, we refer to our previous analysis upholding the validity of the 1986 ordinance. Based on that holding, the requirements of Cityof Columbia are met, in that the City's authority to regulate billboards is established and any suppression of competition caused by the 1986 ordinance in this instance is foreseeable from the operation of Ala. Code 1975, §§ 11-52-70 through -72. Accordingly, we hold that the trial court did not err in ruling that the City was immune as to possible anti-trust violations.
Based on the forgoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.