1 So.3d 15 (2008)
Ex parte Roy DUNCAN and Air Flow Awning Company, Inc.
(In re Roy Duncan and Air Flow Awning Company, Inc. v. City of Montgomery et al.).
1061393.
Supreme Court of Alabama.
April 11, 2008.
Rehearing Denied August 1, 2008.
*17 Richard D. Lively, Prattville, for petitioners.
Kimberly O. Fehl, City of Montgomery Legal Division, for respondents.
COBB, Chief Justice.
On August 15, 2007, this Court granted the joint petition for a writ of certiorari filed by Roy Duncan and Air Flow Awning Company, Inc. ("Air Flow"), to review the no-opinion affirmance by the Court of Civil Appeals of the trial court's summary judgment in favor of the City of Montgomery ("the City"). Duncan v. City of Montgomery (No. 2060198, June 15, 2007), 1 So.3d 22 (Ala.Civ.App.2007)(table). We reverse and remand.

Facts
Duncan and Air Flow Awning Company, of which Duncan is the chief executive officer, began replacing the original wooden windows in a house in the Old Cloverdale historic district in the City with vinyl windows manufactured by Air Flow. (Duncan and Air Flow are hereinafter referred to collectively as "Duncan.") Duncan did not apply for a building permit or get approval for replacing the wooden windows with vinyl windows from those governmental entities vested with the responsibility of preserving the historic, aesthetic, and cultural qualities of the City's designated historic districts.
A resident of Old Cloverdale whose name is not revealed in the record complained to the City about "changes being made" to the exterior of a neighbor's house, the house at which Duncan was replacing the windows. The City investigated the complaint and discovered that three of the original wooden windows on the house had been replaced with vinyl windows. Duncan was ordered to stop the installation of the vinyl windows until he procured approval for the project from the Architectural Review Board for the City ("the Board").[1]
The Board reviews and then either approves or disapproves homeowners' repair, restoration, and improvement projects in the historic districts in the City, with the goal of "carry[ing] out the purposes and responsibilities" of Municipal Ordinance 28-2004. See Ala.Code 1975, § 11-68-2. Municipal Ordinance 28-2004 was enacted for the purpose of protecting, preserving, and rehabilitating "historic properties and the historic, cultural, and aesthetic heritage of the City." Municipal Ordinance 28-2004 provides that "no change in the exterior appearance of ... any building, structure, or site within a Historic District may be made ... unless and until a certificate of appropriateness for such change, erection or demolition is approved by the Board."
After being told that a certificate of appropriateness was required before the installation of the windows could proceed, *18 Duncan submitted to the Board an "[a]pplication for review of construction in a historic district." The application is dated May 2, 2005. On the application, Duncan described the work to be done as "remov[ing] wood windows [and] replac[ing] with white vinyl welded multi-light windows."
On May 24, 2005, the Board held a meeting at which it reviewed and rejected Duncan's application. The Board informed Duncan of its decision in a letter dated May 31, 2005, which stated:
"[T]he Board denied this request as presented since vinyl windows are not in compliance with the [Board's] guidelines for historic districts. It is the recommendations of the Board to replace all vinyl windows with original materials and resubmit details to the Board for review within six months. Furthermore the [Board] requests a review of this property in six months if [Duncan] has not replaced the vinyl windows installed without [Board] approval, to remediate the situation."
On June 30, 2005, Duncan filed in the Montgomery Circuit Court an "Appeal of Final Decision of the Architectural Review Board of the City of Montgomery and Complaint." Duncan named as defendants the City, the Board, and Montgomery's Historical Preservation Commission (the City, the Board, and the Commission are hereinafter referred to collectively as "the defendants"). In addition to his appeal, Duncan's complaint contained an application for a preliminary injunction, a request for a declaratory judgment, and a claim based on negligence.
The defendants filed a motion for a summary judgment on Duncan's claims. The defendants argued that they were entitled to a summary judgment because, they argued, replacing the wooden windows with vinyl ones constituted a "change or alteration to the exterior of the residence" and, therefore, according to the defendants, under Municipal Ordinance 28-2004, Duncan was required to obtain a certificate of appropriateness from the Board before replacing the wooden windows. Further, the defendants interpret the Board's guidelines to authorize the Board to prohibit vinyl windows in the City's historic districts; therefore, according to the defendants, the Board properly denied Duncan's application for a certificate. In addition, the defendants argued that Duncan could not maintain a negligence claim because, they argued, the City does not owe Duncan a duty to permit him to do anything unlawful, and, according to the defendants, vinyl windows are unlawful "changes to [the] exterior [of] buildings" that are not allowed without the Board's approval. Further, according to the defendants, Duncan was contributorily negligent and assumed the risk of incurring damages by unlawfully beginning the installation of the vinyl windows without applying for a certificate of appropriateness.
In response to the defendants' summary-judgment motion, Duncan argued that the vinyl windows do not constitute a "change in the exterior appearance" of the house as that term is used in Municipal Ordinance 28-2004, and, therefore, that the ordinance did not require him to obtain a certificate of appropriateness before installing the vinyl windows. Duncan submitted photographs in support of his argument. Although Duncan did not submit an authenticating affidavit with the photographs, none of the defendants objected to the submission of the photographs, and none of the defendants moved to strike them. Duncan further argued in opposition to the summary-judgment motion that the vinyl windows were not expressly prohibited by the written guidelines of the Board and, therefore, according to Duncan, *19 the Board could not lawfully stop him from replacing the wooden windows with vinyl ones.
The trial court held a hearing on the defendants' summary-judgment motion. During that hearing, the trial court stated that from the evidence presented it could not tell the difference between the vinyl and wooden windows. At the conclusion of the hearing, however, the trial court granted the City's motion for a summary judgment. Subsequently, the trial court entered a summary judgment for all the defendants on all Duncan's claims.

Standard of Review
"`"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce `substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. `[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989)."'"
Gooden v. City of Talladega, 966 So.2d 232, 235 (Ala.2007) (quoting Prince v. Poole, 935 So.2d 431, 442 (Ala.2006), quoting in turn Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004)).

Analysis
Duncan argues that the summary judgment was not appropriate because, he says, genuine issues of material fact exist as to whether the replacement of the wooden windows with vinyl ones was a "change in the exterior appearance" of the building and, therefore, as to whether a certificate of appropriateness was required under Municipal Ordinance 28-2004. The defendants argue, as they did in their motion before the trial court, that, under Municipal Ordinance 28-2004, every "change in the exterior" of a building in a historic district in the City requires the approval of the Board, and, in this case, according to the defendants, the Board's approval was properly withheld.
"Municipalities have the authority to regulate the use of structures and improvements in certain zones or districts and can use their zoning power to regulate aesthetics in maintaining property values." City of Mobile v. Weinacker, 720 So.2d 953, 954 (Ala.Civ.App.1998) (citing Chorzempa v. City of Huntsville, 643 So.2d 1021 (Ala.Crim.App.1993), and Pate v. City Council of Tuscaloosa, 622 So.2d 405 (Ala. Civ.App.1993)). However, "`"[s]o far as [an ordinance] restricts the absolute dominion of the owner over its property, it should furnish a uniform rule of action, and its application cannot be left to the arbitrary will of the governing authorities."'" 720 So.2d at 955 (quoting Longshore v. City of Montgomery, 22 Ala.App. 620, 622, 119 So. 599, 600 (1928), quoting in *20 turn City Council of Montgomery v. West, 149 Ala. 311, 314, 42 So. 1000, 1000 (1907)).
"City ordinances are subject to the same general rules of construction as are acts of the legislature." City of Birmingham v. AmSouth Bank, N.A., 591 So.2d 473, 476 (Ala.1991) (citing S & S Distrib. Co. v. Town of New Hope, 334 So.2d 905 (Ala.1976)). In Ex parte City of Orange Beach Board of Adjustment, 833 So.2d 51, 55-56 (Ala.2001), this Court applied the following general rules of statutory construction to a municipal ordinance:
"`"The fundamental rule of statutory construction is to ascertain and give effect to the intent of the [city council] in enacting the [ordinance]. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the [city council] should be gathered from the language of the [ordinance] itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala. 1978)...."'
"In Ex parte Dorough, 773 So.2d 1001, 1003 (Ala.2000) (citing Ex parte Pfizer, Inc., 746 So.2d 960, 964 (Ala. 1999)), this Court stated:
"`"`....
"`"`"`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"'"'"
Municipal Ordinance 28-2004, to which this Court now applies the above principles of construction, states plainly that
"[n]o change in the exterior appearance of ... any building, structure, or site within a Historic District may be made... unless and until a certificate of appropriateness for such change, erection or demolition is approved by the Board."
Municipal Ordinance 28-2004, Part IV, § 1(a) (emphasis added). Likewise, Ala. Code 1975, § 11-68-9, the statute pursuant to which the City adopted Municipal Ordinance 28-2004, allows municipalities to require a certificate of appropriateness for any "change in the exterior appearance of an historic property or any building ... within an historic district" (emphasis added).
Duncan argues that the term "exterior appearance" means the "way the building looks on the outside." Therefore, according to Duncan, only changes to the outside appearance of a house in a historic district must be submitted to the Board for approval. Duncan further argues that the vinyl windows he is installing do not change the way the house looks on the outside and thus a certificate of approval was not required for their installation.
The defendants take a much more nuanced approach. The defendants presume, without presenting any authority, argument, or discussion, that "exterior appearance" means merely "exterior"; thus, they argue, any changes or repairs to the exterior of a building in a historic district, regardless of whether those changes actually alter the outside "appearance" of the building, require a certificate of appropriateness.
The first step in our de novo review of the trial court's summary judgment is to determine whether the defendants, as the movants, "`"made a prima facie showing *21 that no genuine issue of material fact exists and that the [defendants are] entitled to a judgment as a matter of law."'" Gooden v. City of Talladega, 966 So.2d at 235 (quoting Prince, 935 So.2d at 442, quoting in turn Dow, 897 So.2d at 1038). In this case, we need go no further than this first step, because the defendants have not met their burden.
When the Alabama Legislature and the City enacted the governing statute and Municipal Ordinance 28-2004, respectively, they chose to use the words "change in the exterior appearance" to prescribe when a certificate of appropriateness is required. Despite caselaw stating that, in determining the meaning of a statute or ordinance, "this Court looks to the plain meaning of the words as written," Orange Beach, 833 So.2d at 56 (emphasis added), the defendants simply ignore the word "appearance" in the ordinance. The defendants supplied no legal authority for the definition of the term "exterior appearance" and produced no evidence to support the conclusion that the change created by replacing the wooden windows on the house with the vinyl ones is a change in the "exterior appearance" of the house. Rather, the defendants' arguments all presume that a change in the "exterior" of a building, regardless of whether the outside "appearance" of the building is affected by the change, is all that is needed to trigger the requirement of a certificate of appropriateness. Because the defendants' arguments are not based on the language of Municipal Ordinance 28-2004 "as written," the defendants did not carry their initial burden at the summary-judgment stage, and they were not entitled to a summary judgment.
In ruling that the defendants did not carry their burden, this Court is not to be understood as necessarily adopting or rejecting Duncan's proposed definition of "exterior appearance." The defendants' failure to meet their initial burden at the summary-judgment stage simply means that we need not consider Duncan's proposed definition of that term or the effect of the photographs of the vinyl and wooden windows he submitted as evidence or the trial court's comment that, based on the evidence before it, it could not tell the difference between the vinyl windows and the wooden ones being replaced.
Further, we emphasize that we are expressing no opinion on whether the vinyl replacement windows in fact constitute a change in "exterior appearance." Rather, our holding is limited to a determination that, on this record, the defendants have not met their burden of demonstrating that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law.
Duncan also argues that, because vinyl windows are not among those items listed in a document titled "Architectural Review Board Guidelines" as expressly prohibited in historical districts, the Board has no authority to prevent him from replacing the wooden windows on the house with vinyl ones. Having found that summary judgment was improper because the defendants failed to carry their burden of showing that the vinyl windows changed the "exterior appearance" of the residence, the Court will not address Duncan's argument as to the guidelines.
Finally, the defendants argue that they are entitled to a summary judgment as to Duncan's negligence claim because, they argue, the City "does not owe Duncan a duty to do anything unlawful." Thus, the defendants' argument as to the existence of a duty rests on the defendants' assumption that the installation of the vinyl windows is unlawful under Municipal Ordinance 28-2004. However, as discussed above, the defendants have not met their burden of demonstrating that they *22 are entitled to a judgment as a matter of law on this issue. Therefore, summary judgment is not appropriate on Duncan's negligence claim, based on this record. In so holding, we do not hold that the City owed Duncan any duty; we simply hold that the defendants have not demonstrated that the City owes Duncan no duty and, therefore, the defendants are not entitled to summary judgment on Duncan's negligence at this time.

Conclusion
For the reasons stated above, the defendants are not entitled to a summary judgment on this record. The judgment of the Court of Civil Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, WOODALL, STUART, SMITH, BOLIN, and MURDOCK, JJ., concur.
PARKER, J., concurs specially.
LYONS, J., concurs in the result.
PARKER, Justice (concurring specially).
Roy Duncan and Air Flow Awning Company, Inc., sought certiorari review of the Court of Civil Appeals' no-opinion affirmance, alleging a conflict with that decision and City of Mobile v. Weinacker, 720 So.2d 953 (Ala.Civ.App.1998).
I write specially to reiterate a fundamental principle about private property set forth in Weinacker:
"`"[S]o far as [an ordinance] restricts the absolute dominion of the owner over its property, it should furnish a uniform rule of action, and its application cannot be left to the arbitrary will of the governing authorities."' Longshore v. City of Montgomery, 22 Ala.App. 620, 622, 119 So. 599, 600 (1928), quoting City Council of Montgomery v. West, 149 Ala. 311, 314, 42 So. 1000, 1000 (1907)."
720 So.2d at 954-55.
NOTES
[1] The record does not identify the person or governmental entity who ordered Duncan to stop the installation.