MOORE, Judge.
 

 Jerry James appeals from a summary judgment entered in favor of the City of Russellville in a breach-of-contract and fraud action. We affirm.
 

 On September 5, 2002, James filed a five-count complaint against the City of Russellville (“the City”) arising out of the City’s alleged refusal to allow him to locate manufactured homes in certain residential districts within the municipality based on the City’s interpretation of its then-existing zoning ordinance. On August 10, 2003, while the action was pending, the City adopted a new zoning ordinance specifically addressing manufactured homes. On July 22, 2004, James and the City entered into a “mediation agreement” regarding
 
 *113
 
 the pending action in which the City-agreed to, among other things, pave the streets in the Deer Run subdivision “in accordance with normal city standards and specifications no later than September 20, 2007.” On December 31, 2004, James executed a “General Release and Settlement Agreement” (“the settlement agreement”) in which he released all claims against the City in exchange for, among other things, the performance of the promises the City had made in the mediation agreement.
 

 In August 2007, the City began paving the streets in the Deer Run subdivision. James demanded that the streets be paved at a width of 20 feet. The City maintained that the mediation agreement required only that it pave the streets at a width of 18 feet. James notified the City that he intended to pursue legal action if the City did not pave the streets as he demanded. At that point, the mayor of the City instructed that all paving work cease until the dispute could be resolved. James filed a breach-of-contract action against the City on December 10, 2007, which he amended on February 4, 2008, to allege that the City had defrauded him into entering the mediation agreement and the settlement agreement by stating that it would pave the streets in the Deer Run subdivision at a width of 20 feet.
 

 On May 23, 2008, the City filed a motion for a summary judgment. On June 26, 2008, James filed a brief opposing that motion and requesting the right to conduct discovery to enable him to respond to the City’s evidentiary submissions. On September 4, 2008, the trial court entered a summary judgment for the City without allowing James to conduct discovery. On September 30, 2008, James filed a motion to alter, amend, or vacate the summary judgment. On December 23, 2008, the parties consented on the record to extend the time for the trial court to rule on that motion to February 6, 2009.
 
 See
 
 Rule 59.1, Ala. R.. Civ. P. (“No postjudgment motion filed pursuant to Rules 50, 52, 55, or 59 shall remain pending in the trial court for more than ninety (90) days, unless with the express consent of all the parties, which consent shall appear of record .... ”). Because the trial court did not rule on the motion on or before February 6, 2009, the postjudgment motion was deemed denied by operation of law.
 
 Id.
 
 (“A failure by the trial eourt to render an order disposing of any pending post-judgment motion within the time permitted hereunder, or any extension thereof, shall constitute a.denial of such motion as of the date of the expiration - of the period.”). James timely appealed.
 

 On appeal, James argues that the trial court erred in denying him the right to conduct discovery to obtain evidence' to oppose the City’s summary-judgment motion and in finding that the City was entitled to a summary judgment. We elect to address the issues in reverse order.
 

 Our standard of review in cases in which a summary judgment has been entered is well settled:
 

 “ ‘ “ ‘This Court’s review of a summary judgment is
 
 de novo. Williams v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.
 
 *114
 
 1986). Once the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce “substantial evidence” as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assur. Co. of Fla.,
 
 547 So.2d 870, 871 (Ala.1989).’ ” ’
 

 “Gooden v. City of Talladega,
 
 966 So.2d 232, 235 (Ala.2007) (quoting
 
 Prince v. Poole,
 
 935 So.2d 431, 442 (Ala.2006), quoting in turn
 
 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004)).”
 

 Ex parte Duncan,
 
 1 So.3d 15, 19 (Ala. 2008).
 

 In his fraud claim, James maintained that the City had induced him into executing the mediation agreement and the settlement agreement by stating that it would pave the streets in the Deer Run subdivision at a width of 20 feet. We note that such allegations amount to a claim of promissory fraud.
 

 “ ‘ “The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as- a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim ..., two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive.” ’
 

 “[Ex parte
 
 ]
 
 Michelin North America,
 
 795 So.2d [674,] 678-79 [(Ala.2001)] (quoting
 
 Padgett [v. Hughes,]
 
 535 So.2d [140,] 142 [ (Ala.1988) ]).”
 

 Southland Bank v. A & A Drywall Supply Co.,
 
 21 So.3d 1196, 1210 (Ala.2008).
 

 In his breach-of-contract claim, James alleged that the City had breached its promise contained in the mediation agreement to pave the streets in the Deer Run subdivision at a width of 20 feet by September 20, 2007.
 

 “To prevail on a breach-of-contract claim, a plaintiff is required to prove ‘(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiffs] own performance under that contract, (3) the defendant’s nonperformance, and (4) damages.’
 
 Southern Med. Health Sys., Inc. v. Vaughn,
 
 669 So.2d 98, 99 (Ala.1995).”
 

 Baldwin v. Panetta,
 
 4 So.3d 555, 561 (Ala.Civ.App.2008).
 

 In this case, one common element of both claims raised by James requires proof that the City promised to pave the streets of the Deer Run subdivision at a width of 20 feet. In his brief to this court, James maintains in his statement of facts that he “submitted evidence that the City represented, agreed, and is obligated to pave the subdivision streets twenty (20) feet.” Reviewing the pages of the record to which James refers in his brief, we find the mediation agreement and the affidavit James filed in opposition to the motion for a summary judgment. James attested in his affidavit that “the City of Russellville has refused to pave the streets to 20 feet as represented and required by the mediation agreement attached hereto....” (Bold typeface in original.) The mediation agreement does not contain any express representation that the City would pave the streets in the subdivision at a width of
 
 *115
 
 20 feet; it provides only that the City would pave the streets “in accordance with normal city standards and specifications no later than September 20, 2007.”
 

 In its motion for a summary judgment, the City asserted that the “normal city standards and specifications” do not require 20-foot-wide paved streets in the subdivision. The City presented evidence indicating that the only zoning ordinance regulating the width of roads pertains to “Manufactured Home Districts” created by the 2003 zoning ordinance, which required 20-foot-wide roadways. The City presented further evidence indicating that the Deer Run subdivision does not lie within the “Manufactured Home Districts” created by the 2003 zoning ordinance. Thus, the City then turned to its “Subdivision Regulations,” which state that “the minimum roadway widths shall be according to the State Highway Department Specifications.” Those specifications, in turn, require that roadways with a speed limit of between 10 and 40 miles per hour must be at least 18-feet wide. The City showed that the applicable speed limit for the streets in the Deer Run subdivision is 25 miles per hour. Taken together, the evidence presented by the City proves that the City’s standards require only that the streets in the subdivision be paved at a width of at least 18 feet.
 

 In response, James argued that the mediation agreement calls for 20-foot-wide paved streets in the Deer Run subdivision because that subdivision lies within a “Manufactured Home District” and has since September 19, 2000. On that date, an unsigned and unnotarized document entitled “Restrictions of Deer Run Subdivision” was recorded in the Probate Court of Franklin County. That document set out restrictions limiting the use of the subdivision to single-family dwellings constructed in accordance with standards established “either by the State Minimum Standard Codes ... or the National Manufactured Housing Construction and Safety Standards Acts for manufactured homes.” The document then set out certain requirements for installing manufactured homes in the subdivision. James maintained that the recording of the restrictive covenants on the use of the subdivision transformed the subdivision into a “Manufactured Home District.”
 

 That argument is without merit. The 2003 zoning ordinance is the only City standard requiring 20-foot-wide roadways. That requirement applies only to “Manufactured Home Districts” created by the City pursuant to the 2003 zoning ordinance. The restrictive covenants recorded in 2000 existed before the 2003 zoning ordinance was enacted, and the covenants were not created by the City. Rather, they appear to be restrictive covenants created by the owners of the subdivision.
 

 “Zoning ordinances regulate the use of land through the exercise of the police power in accordance with a comprehensive plan for the entire community. As an exercise of the state police power to promote the general welfare, zoning is entirely divorced in concept, creation, enforcement, and administration from restrictions arising out of agreements between private parties who, in the ex: ercise of their constitutional right of freedom of contract, can impose whatever lawful restrictions upon the use of their lands that they deem advantageous or desirable. Zoning restrictions and restrictions imposed by private covenants are independent controls upon the use of the land, the one imposed by the municipality for the public welfare, the other privately imposed for private benefit.
 

 
 *116
 
 . “Both types of land restrictions are held by courts-to legally operate independently of one another.”
 

 5 Edward R. Zieglar,
 
 Rathkopfs The Law of Zoning and Planning
 
 § 82:2 (2005). The parties who recorded the restrictive covenants may have intended that manufactured homes would be allowed in the Deer Run subdivision subject to the conditions contained in the covenants, but they did not thereby create a “Manufactured Home District” within the meaning of the City’s zoning ordinance.
 

 James also argued that because the City maintains two different standards for determining the width of roadways, the phrase “normal city standards and specifications” constitutes a latent ambiguity that only a jury can resolve. However, whether a phrase in a contract is ambiguous is a question of law for the court.
 
 P & S Bus., Inc. v. South Cent. Bell Tel. Co.,
 
 466 So.2d 928, 931 (Ala.1985) (citing
 
 Haddox v. First Alabama Bank of Montgomery,
 
 449 So.2d 1226, 1228 (Ala.1984), and
 
 Food Serv. Distribs., Inc. v. Barber,
 
 429 So.2d 1025, 1028 (Ala.1983)). The two different standards to which James refers are (1) the standard applicable to “Manufactured Home Districts” requiring 20-foot roadways and (2) the standard applicable to all other districts in which roadway width depends on the operative speed limit. However, because only one standard applies to the Deer Run subdivision, the mere existence of another, unrelated standard does not inject uncertainty as to the meaning of the mediation agreement, which required the City to pave the streets in the subdivision “in accordance with normal city standards and specifications.” That phrase can mean only that the City would pave the streets in the subdivision in compliance with the standard ordinarily applicable to such streets.
 

 James next contended that the “Franklin County Highway Department Subdivision Regulations” actually require the roads in the Deer Run subdivision to be paved at a width of 20 feet. In his brief in opposition to the City’s motion for a summary .judgment, James purported to quote a portion of those regulations in support of his contention and indicated that he had attached the quoted material to his affidavit as “Exhibit E.” However, the record before this court contains no such exhibit. The pages cited by James in his appellate brief do not contain the quoted material. It is not the duty of this court to search an appellate record for evidence to support an appellant’s contention of error.
 
 Jenkins v. Landmark Chevrolet, Inc.,
 
 575 So.2d 1157, 1161 (Ala.Civ.App.1991). Nevertheless, the court searched the entire record for the regulation upon which James relies but could not locate it. Because we did not find it, we must assume that, if it exists, the trial court properly considered it to be inapplicable to the Deer Run subdivision.
 
 See Kaufman v. Kaufman,
 
 22 So.3d 458, 464 (Ala.Civ.App.2007) (“Further, when all the evidence before the trial court is not submitted to this court as part of the record on appeal, this court must presume that the evidence not before it was sufficient to support the trial court’s judgment.” (citing
 
 Berryhill v. Mutual of Omaha Ins. Co.,
 
 479 So.2d 1250, 1251 (Ala.1985), and
 
 Wilkens v. Kaufman,
 
 615 So.2d 613, 615 (Ala.Civ.App.1992))).
 

 Finally, James maintained that the parties had agreed in the mediation agreement that the City would amend its zoning laws to include the following provision:
 

 “Specifically, this Ordinance shall not affect the rights of owners of lots in Deer Run Subdivision to combine or place any house, Manufactured Home or Modular Home in that subdivision under
 
 *117
 
 the approval granted by the Planning Commission of the City prior to their adoption of this Ordinance provided that said homes have a roof pitch of at least 9:12 nominal, are aesthetically compatible with other homes in Deer Run Subdivision and otherwise meet the definition of a Class A Manufactured Home or Modular Home.”
 

 James contends that, when construing the mediation agreement as a whole,
 
 see Adcock v. Adams Homes, LLC,
 
 906 So.2d 924, 932 (Ala.2005) (holding that all portions of contract referring to same subject matter should be construed together as a whole), the trial court should have concluded that the parties recognized the Deer Run subdivision to be a “Manufactured Home District” and that the 20-foot-road-width requirement should therefore apply. The above-quoted amendment merely endorses the City planning commission’s authority to approve the location in the subdivision of individual manufactured and modular homes deemed compatible with regular homes before the passage of the 2003 ordinance. That authority essentially amounts to the power to grant a variance.
 
 See Swann v. Board of Zoning Adjustment of Jefferson County,
 
 459 So.2d 896 (Ala.Civ.App.1984). James does not explain how recognition of that authority evidences the intent of the parties to treat the entire Deer Run subdivision as a “Manufactured Home District” for road-paving purposes. This court cannot agree that the mediation agreement evidences any such intent on behalf of both parties.
 

 Viewing the entirety of the evidence in a light most favorable to James, it appears that he was under the mistaken impression that the 2000 restrictive covenants and the amendment to the 2003 zoning ordinance had transformed the Deer Run subdivision into a “Manufactured Home District.” As James stated in his affidavit, based on his subjective belief, he saw “no need ... to bargain for twenty (20) foot streets.” As a result, he did not extract any express statement or agreement from the City that it would, in fact, pave the streets in the Deer Run subdivision at a width of 20 feet. As it turns out, the evidence proves, without dispute that the agreement to pave the streets in the subdivision “in accordance with normal city standards and specifications” also did not imply a 20-foob-width requirement. Hence, James has failed to present substantial evidence indicating that the City ever stated or agreed to pave the streets in the subdivision as he claims.
 

 As for his discovery issue, James points out that, on February 7, 2008, only three days after he filed his amended complaint asserting a fraud claim against the City, the trial court stayed all discovery. As a result, as James puts it, he did not get to conduct any discovery “to properly oppose the City’s motion for summary judgment.”
 

 Rule 56(f), Ala. R. Civ. P.; provides:
 

 “Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party’s opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery .to be had or may make such other order as is just.”
 

 In this case, one of James’s attorneys filed an affidavit indicating that James needed to depose the witnesses who had filed affidavits in support of the City’s summary-judgment motion. Those witnesses included Bill Fuller, Tom Pace, Chris Hargett, and Mayor Johnny Brown. Fuller is the building inspector' for the City, and he testified that, in 2003, the City amended its zoning ordinances to recognize “Manufactured Home Districts” for the first time.
 
 *118
 
 Pace is the street superintendent for the City; he testified that the City’s subdivision regulations state that the minimum roadway widths must be in accordance with the “State Highway Department Specifications,” which require an 18-foot width for roads with speed limits of between 10 and 40 miles per hour. Hargett is the chief of police of the City, and he attested that the speed limit in the Deer Run subdivision is 25 miles per hour. Mayor Brown testified that, in 2007, James demanded that the City pave the roads in the subdivision at a width of 20 feet or he would seek his attorney’s assistance and that, based on that conversation, Mayor Brown ordered that all paving be ceased.
 

 James’s attorney did not explain how deposing those witnesses could possibly lead to evidence contradicting their statements. With the exception of Mayor Brown’s affidavit, all the testimony relates to indisputable facts of public record. Mayor Brown’s affidavit merely explains why the City ceased paving the roads, in the subdivision, a fact that is not material to the issues raised in the summary-judgment motion. Without the requested discovery, James was able to marshal all the evidence upon which he relied to support his belief that the City had agreed to pave the roads at a width of 20 feet. James has not identified any potential evidence within the control of the City or its witnesses that would have helped him prove his case.
 

 “ ‘Rule 56(f) protects a party opposing a motion for summary judgment if the party states reasons why he cannot present essential facts.’
 
 Starks v. Commercial Union Ins. Co.,
 
 501 So.2d 1214, 1216 (Ala.1987). Proper application of Rule 56(f) requires the nonmoving party to demonstrate by affidavit,
 
 Herring v. Parkman,
 
 631 So.2d 996, 1002 (Ala.1994), ‘that matters it seeks by further discovery are “crucial” to its case.’
 
 Smith v. Yanmar Diesel Engine Co.,
 
 855 So.2d 1039, 1042 (Ala.2003) (citing
 
 Stallworth v. AmSouth Bank,
 
 709 So.2d 458, 468 (Ala.1997)); see also
 
 McCullar v. Universal Underwriters Life Ins. Co.,
 
 687 So.2d 156, 161 (Ala.1996) (nonmov-ant at summary-judgment stage has the ‘burden of proving how information from [documents sought in discovery] is crucial to her case’).”
 

 Vick v. Sawyer,
 
 936 So.2d 517, 521-22 (Ala.2006). Based on our review of the record, we conclude that the trial court did not exceed its discretion in granting the City’s summary-judgment motion without allowing James to conduct further discovery.
 
 See Griffin v. American Bank,
 
 628 So.2d 540 (Ala.1993) (reviewing denial of Rule 56(f) motion based on abuse-of-discretion standard).
 

 AFFIRMED.
 

 THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
 

 PITTMAN, J., concurs in the result, without writing.